## PEOPLE *v.* DORRINGTON.

1. CRIMINAL LAW—POSSESSION OF BURGLAR'S TOOLS—ELEMENTS OF CRIME—INTENT.

   Three essential elements are involved in the crime of felonious possession of burglar's tools, under 3 Comp. Laws 1915, § 15334: The tool or implement must be adapted and designed for breaking and entering; possession by one with knowledge that it is adapted and designed for the purpose of breaking and entering; and possession with intent to use or employ the same in breaking and entering.

2. SAME—"ADAPTED"—"DESIGNED"—DEFINITION.

   The term "adapted and designed," as used in said statute

---

On admissibility as evidence against defendant of documents or articles taken from him, see notes 59 L. R. A. 466; 8 L. R. A. (N. S.) 762; 34 L. R. A. (N. S.) 58; L. R. A. 1915B, 834; L. R. A. 1916E. 715.

As to what are burglar's tools within statute forbidding possession of such tools, see note 50 L. R. A. (N. S.) 825.

defining felonious possession of burglar's tools, means something more than mere common household articles capable of use in breaking and entering, and such tools must not only be adapted, that is, capable of being used in breaking and entering, but as well designed, that is, contrived or taken to be employed for such purpose.

3. SAME—POSSESSION OF LEGITIMATE ARTICLES INSUFFICIENT—INTENT—INFERENCE.

The possession of five skeleton keys, an alarm clock with a battery to ring its bell, and two knitting needles, in the absence of any evidence warranting an inference that defendant possessed them for the purpose of breaking and entering, was insufficient to sustain a conviction of felonious possession of burglar's tools under said statute, since said articles serve a legitimate purpose, and afford no basis for an inference of possession for a criminal one.

4. SAME—ARREST—SEARCHES AND SEIZURES—EVIDENCE—ADMISSIBILITY.

Where the officers went to defendant's home on suspicion that he might have been concerned in certain burglaries, without a warrant for his arrest or a search warrant, and, after gaining admission by saying they wanted to talk with him, arrested him and searched the house, the search was unlawful, and the articles so taken were not admissible in evidence against him.

5. SAME.

That defendant and his wife engaged in a fight with the officers, would not operate to open the house to search without a search warrant.

6. SAME—EVIDENCE—ADMISSIBILITY—TRIAL—OFFER OF INCOMPETENT EVIDENCE PREJUDICIAL—EXPLOSIVES.

In a prosecution for the felonious possession of burglar's tools, among which was an alarm clock with a battery attached, claimed to be adapted for use in touching off a bomb, an offer by the prosecuting attorney to show that a boat in which it was claimed defendant escaped from Canadian officers blew up, was so clearly prejudicial as to constitute reversible error, although the objection to said testimony was sustained.

Error to recorder's court of Detroit; Heston (Wil-

liam M.), J.   Submitted January 12, 1923.   (Docket
No. 139.)   Decided February 5, 1923.

Elmer Dorrington was convicted of having burglar's
tools in his possession, and sentenced to imprisonment
for not less than 5 nor more than 10 years in the State
prison at Jackson.   Reversed.

*Sol. Blumrosen,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Paul W.
Voorhies,* Prosecuting Attorney, and *Harry S. Schein-
man,* Assistant Prosecuting Attorney, for the people.

WIEST, C. J.   Defendant was convicted of feloniously
having in his possession "five skeleton keys, a time
bomb outfit and two steel rods," adapted and designed
for cutting through, forcing and breaking open build-
ings, rooms, vaults, safes and other depositories, in
order to steal therefrom, well knowing the implements
to be adapted and designed for such purpose and with
intent to use and employ the same for breaking and
entering.   We have stated but the substance of the
charge.   Defendant was convicted and sentenced to
prison for an indeterminate term of 5 to 10 years.
Defendant assigns error upon rulings of the trial
court, remarks of the prosecuting attorney, and insists
the verdict is against the great weight of the evidence
and the trial court was in error in not granting a new
trial.

The evidence at the trial disclosed that the "five
skeleton keys," were common house keys, the "time
bomb outfit," was a cheap alarm clock with a battery
rigged up to ring the bell, and the "two steel rods"
were knitting needles.   The prosecution claimed the
house keys were adapted to unlocking common locks;
the alarm clock and battery could be arranged to set
off an explosive and the knitting needles could be used
to push a key out of a lock or turn it in the lock.

The statute under which defendant was prosecuted provides:

"Every person who shall knowingly have in his possession, any engine, machine, tool or implement, adapted and designed for cutting through, forcing or breaking open any building,   *   *   *   knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ the same for the purpose aforesaid."   *   *   *   3 Comp. Laws 1915, § 15334.

Three essential elements are involved in this crime: *First*. The tool or implement must be adapted and designed for breaking and entering. *Second*. It must be in the possession of one who has knowledge that it is adapted and designed for the purpose of breaking and entering. *Third*. It must be possessed with intent to use or employ the same in breaking and entering.

Are common house keys, an alarm clock with a battery to ring its bell, and knitting needles, in and of themselves, burglar's tools? To ask the question is to answer it. Such things are not designed for breaking and entering but for an entirely different purpose. It is not enough, to constitute their possession criminal, to say that they may be employed in breaking and entering. This statute has some provisions against strained use thereof which seem to have been overlooked in this prosecution. The term "adapted and designed" means something more than mere common household articles capable of use in breaking and entering. To come within the statute, the tools must not only be adapted, that is, capable of being used in breaking and entering, but as well designed, that is, contrived or taken to be employed for such purpose.

Keys and tools may be so contrived as to clearly indicate the criminal purpose of possessing them. But house keys, and an alarm clock with a battery to ring

its bell, and knitting needles, in a home, serve a legitimate purpose, and bear a harmless character, for they have been contrived for a useful purpose, and they afford no basis for an inference of possession for a criminal purpose. They remain house keys and clocks and needles, unless intended to be used for the purpose of breaking and entering. It is not enough that they may be used in breaking and entering, but the intent to so employ them must appear in order to constitute the crime here charged.

Keys, of course, are designed to open locks, and one may have as many house keys in his home as he may desire, and if he has more keys than locks, that fact justifies no inference that they are burglar's tools. It is not a crime to have house keys, an alarm clock and knitting needles in a home. It is a crime to have keys, bombs and rods for the purpose of breaking and entering. There is no evidence in this record, and no circumstance disclosed, warranting any inference that defendant possessed the keys, clock and knitting needles for the purpose of breaking and entering.

The trial judge instructed the jury that, in order to find the defendant guilty, they would have to find "that he had the intent to use and employ them (the keys, clock and needles) for the purpose of committing a larceny upon a building, vault, safe or other depository that he was to break into." There are cases where the tools and implements are so clearly contrived and adapted for breaking and entering as to warrant a finding that their possession could not possibly be for any other purpose, but house keys, an alarm clock and knitting needles bear no such villainous character. The police explained how this alarm clock and battery could be arranged to set off a bomb. We apprehend from such explanation that any alarm clock can be so arranged. That an alarm clock may be made to

serve a nefarious purpose does not make it unlawful to have such a time piece and a battery to ring its bell. Knitting needles are not burglar's tools. The motion to discharge the defendant should have been granted.

The police went to the home of defendant at midnight, upon suspicion that he had been concerned in burglaries, having been informed he was seen in the neighborhood of a house burglarized a few days before. When they got to defendant's house they rang the door bell and when asked what they wanted said they wanted to talk with defendant. Defendant left the door for a moment and then came back, opened it and the police stepped in, and a free-for-all fight took place. The police claimed the defendant and his wife started the fight. After the fight was quelled, defendant was sent to the police station and his wife to a detention place for women, then the police searched the house, and found the "skeleton keys" and the knitting needles in a locked bureau drawer and the alarm clock, performing the ordinary function of a time piece, peacefully ticking the right time. A motion for the return of the articles so seized was made and denied by the trial court.

The point is made that the police had no right to search the house. The police had no warrant for the arrest of defendant and no warrant for the search of his house. The disclosed reason for suspicion of defendant would not have been sufficient to procure a search warrant or a warrant for his arrest. The search made was unlawful and the motion to suppress the fruit of the search should have been granted. If the police went there to talk with defendant and obtained entrance to the house for that purpose, then, of course, they did not go there to search the premises. The fight with defendant and his wife did not operate to open the house to search. The police had all the

information, upon which they acted, in time to apply for a search warrant in due course, but had they applied, their information, as disclosed by this record, would have fallen far short of authorizing the issuance of a search warrant. We do not feel called upon to enlarge upon this feature of the case for the reason that, even though the evidence was lawfully before the court, the defendant, under this record, should have been found not guilty, and the court should have so instructed the jury.

The other errors alleged have been considered and only one calls for consideration. The prosecuting attorney offered to show that a boat in' which it was claimed the defendant escaped from Canadian officers blew up. An objection to this was sustained. The statement is claimed to have been prejudicial to defendant. We think the point well taken. The only purpose of such testimony would have been to set the jury against defendant and was so clearly inadmissible and prejudicial to inject it by way of statement before the jury, and so inexcusable, as to constitute reversible error. *People* v. *Hunter*, 218 Mich. 525. Defendant was in court to meet a specific charge and the insinuation that he was acquainted with explosives was a highly prejudicial suggestion to the jury in connection with the theory that the alarm clock could be used to touch off a bomb.

The conviction is reversed and a new trial granted.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.