PEOPLE v ALLAY

Docket No. 100532. Submitted March 8, 1988, at Detroit. Decided
    September 19, 1988.

Hasson Allay was convicted by a jury in Detroit Recorder's Court,
    Joseph A. Gillis, J., of operating a chop shop and possessing
    stolen property exceeding $100 in value. Defendant appealed.

    The Court of Appeals *held:*

    1. Sufficient evidence established beyond a reasonable doubt
    that a partially disassembled automobile found at defendant's
    garage was a stolen vehicle, thus satisfying a common, essential
    element of both crimes in this case that the property in
    question be in fact stolen.

    2. Defendant's convictions under the receiving and concealing
    statute and the chop shop statute violate his double jeopardy
    protection against multiple punishment. These statutes do not
    protect against two distinct sources of harm nor uphold distinct
    social norms. Rather, the chop shop statute is aimed at a subset
    of conduct already encompassed by the more general receiving
    and concealing statute and the penalties and remedies provided
    under the chop shop statute indicate that these statutes are
    hierarchical or cumulative in nature, i.e., the chop shop statute
    incorporates most of the elements of the receiving and conceal-
    ing statute and builds on that statute by punishing more
    harshly.

    3. Defendant was not denied effective assistance of counsel at
    trial. Any deficiency in counsel's performance was not so seri-
    ous as to give rise to a reasonable probability that, absent the
    claimed errors, the jury may have had a reasonable doubt
    about defendant's guilt. Counsel's statements at allocution
    regarding inculpatory statements made by defendant in the
    course of their attorney-client relationship were made in an

REFERENCES
Am Jur 2d, Criminal Law §§ 243 et seq.
Am Jur 2d, Trial §§ 481 et seq.
See Index to Annotations under Double Jeopardy; Receiving and
    Transporting Stolen Property; Same or Similar Acts or Matters.

effort to influence the sentence and did not result in ineffective assistance inasmuch as defendant's guilt had already been determined at the time the statements were disclosed.

Affirmed in part and reversed in part; the conviction and sentence for possession of stolen property is vacated.

1. CRIMINAL LAW — DIRECTED VERDICT.

Due process requires that a challenge, raised in a motion for a directed verdict of acquittal, to the sufficiency of the evidence be resolved by considering all evidence adduced up to the time of the motion, viewing that evidence in a light most favorable to the prosecutor, and determining whether a rational trier of fact could have found that the essential elements of the charged crimes were proven beyond a reasonable doubt.

2. CRIMINAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENTS.

Statutes prohibiting conduct violative of distinct social norms generally are viewed as separate and amenable to permitting the imposition of multiple punishment; however, where two statutes prohibit violations of the same social norm in a different manner, or where a statute which incorporates most of the elements of a base statute increases the penalty for violation where there is aggravating conduct, it is evidence that the Legislature did not intend punishment to be imposed under both statutes for one transaction.

3. CRIMINAL LAW — DOUBLE JEOPARDY — RECEIVING AND CONCEALING STOLEN PROPERTY — CHOP SHOPS.

Convictions for both receiving and concealing stolen property exceeding $100 in value and operating a chop shop arising out of one transaction violate a defendant's protection against double jeopardy (MCL 750.535, 750.535a; MSA 28.803, 28.803[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: McDonald, P.J., and Holbrook, Jr., and T. R. Thomas,* JJ.

Holbrook, Jr., J. After a jury trial, defendant was convicted of operating a chop shop, MCL 750.535a; MSA 28.803(1), and possessing stolen property exceeding $100 in value, MCL 750.535; MSA 28.803, and was thereafter sentenced to prison terms of three to five years on each conviction.

Gregory Miller testified that he was operating an automobile owned by his mother just before 4:00 P.M. on September 5, 1986. As he stopped at a mail box, two men pulled him out and drove off with the automobile. Miller could not identify the men.

Acting in response to a report concerning a possible stolen automobile, Officer Bradley investigated a garage alleged to be a chop shop about 6:30 or 7:00 P.M. Although Bradley was unsure of the exact date of this investigation, he recollected that it occurred the same day as the theft of the automobile operated by Miller. Bradley observed through a window in the garage dismantled parts of an automobile, including a license plate, and heard sounds that he associated with automobile disassembly. Bradley verified by a computer check of the license number that the automobile had been reported stolen a few hours earlier. Bradley further observed the process of loading the doors of a Cadillac automobile into a covered pickup truck.

Soon thereafter, the police raided the garage, and defendant, one of three persons arrested, was discovered inside the truck as he was stacking car doors. A partially disassembled Cadillac was found

---

* Circuit Court judge, sitting on the Court of Appeals by assignment.

inside the garage. Officer Dennis Bielskis testified that he obtained the vehicle identification number (VIN) from the Cadillac and verified that it was "the same vehicle reported as [a] stolen vehicle," i.e., the Miller automobile.

Defendant argues that the evidence was insufficient to show that the automobile found in the garage was in fact stolen because of the lack of evidence identifying the automobile found at the arrest site as the automobile taken earlier that day from Miller. That the property in question was stolen is an essential element of the crime of receiving, concealing, or possessing stolen property. *People v Wolak,* 110 Mich App 628, 631-632; 313 NW2d 174 (1981), lv den 414 Mich 940 (1982). An essential element of the crime of operating a chop shop, as it pertains to this case, is that activities of "altering, dismantling, reassembling, or in any way concealing or disguising the identity of a *stolen* motor vehicle" be conducted on the premises in question. MCL 750.535a(1)(a); MSA 28.803(1)(1)(a). Thus, an insufficiency of the evidence as alleged would render invalid both of the convictions obtained against defendant. Due process requires that a challenge raised in a motion for a directed verdict of acquittal to the sufficiency of the evidence be resolved by considering all evidence adduced up to the time of the motion for a directed verdict, viewing that evidence in a light most favorable to the prosecutor, and determining whether a rational trier of fact could have found that the essential elements of the charged crimes were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980).

In light of this standard, we find no error. Although the proofs omitted an explicit mention of

the license plate number or VIN of the automobile discovered at the time of defendant's arrest, which would have conclusively linked that automobile to the one taken from Miller, this omission can probably be explained as prosecutorial inadvertence. What is apparent is that the police officers checked both numbers and concluded that they had found the automobile reported stolen a few hours earlier. Officer Bielskis' testimony makes this clear. Nobody challenged this basic assumption. Furthermore, since a photograph of the license plate found at the garage was admitted into evidence, the trier of fact had before it objective, verifiable means of linking that automobile with the vehicle taken from Miller, which witnesses identified at trial by testifying to its license number. We find that the prosecutor's evidence was sufficient to establish the stolen nature of the automobile beyond a reasonable doubt.

Defendant next argues that his convictions for both possession of stolen property and operating a chop shop violated his double jeopardy protection against multiple punishment. We agree.

In its context of prohibiting multiple punishment for the same act or transaction, the seminal double jeopardy case is *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984). After an exhaustive review of the state of the case law, the Court in *Robideau* held that the controlling inquiry is whether the Legislature intended to authorize multiple punishment under different statutes for a single criminal transaction perpetrated by the defendant. Thus, double jeopardy constrains only the prosecutor and the courts from trying the defendant for multiple offenses in one proceeding, imposing no substantive limitation on the power of the Legislature to proscribe multiple punishment or to prohibit the same wrong as several criminal

offenses. *Id.,* p 485. This Court's role is therefore limited to ascertaining the Legislature's intent. To that end, the Court in *Robideau* provides two helpful aids.

First, each criminal statute should be examined to determine whether the prohibited conduct is violative of a social norm distinct from that norm protected by the other statute. If so, then an indication of a legislative intent to authorize multiple punishment is to be inferred. If, however, the two statutes do no more than to "prohibit violations of the same social norm, albeit in a somewhat different manner," that conclusion generally leads to an inference of a legislative intent to permit only one conviction. *Id.,* p 487.

A second consideration in the determination of legislative intent is whether the punishments provided by the statutes are hierarchical or cumulative in nature, that is, whether the statute prohibiting the greater offense incorporates most of the elements of the base statute and builds on that less serious offense by requiring a showing of some aggravating conduct or factor, which is thereby punished more harshly than the offense prohibited by the base statute. *Id.,* pp 487-488. If such a hierarchy exists, an intent to punish the defendant under only one of the statutes emerges. See also *People v Sturgis,* 427 Mich 392, 407; 397 NW2d 783 (1986).

Finally, if a review of the two charged criminal offenses results in no clear indication of legislative intent, the rule of lenity requires that the defendant be convicted under only one statute. *Robideau, supra,* p 488; *People v Wakeford,* 418 Mich 95, 113-114; 341 NW2d 68 (1983).

Our application of the foregoing to the two criminal offenses for which defendant now stands convicted leads us to hold that the Legislature

intended to preclude multiple convictions and punishments in this case. Defendant's conviction for possession of stolen property was obtained pursuant to the statutory provision for buying, receiving, possessing, or concealing stolen property, which states in pertinent part:

> A person who buys, receives, possesses, conceals or aids in the concealment of stolen, embezzled, or converted money, goods, or property knowing the money, goods, or property to be stolen, embezzled, or converted, if the property purchased, received, possessed, or concealed exceeds the value of $100.00, is guilty of a felony. [MCL 750.535(1); MSA 28.803(1).]

The essential elements for a conviction pursuant to the receiving and concealing statute require proof (1) that some property was stolen, (2) that the defendant bought, received, concealed, possessed, or aided the concealment of the same, (3) that the property is identified as property previously stolen, and (4) that the defendant had knowledge of the stolen nature of the property at some time during his wrongful course of conduct. *People v Toodle,* 155 Mich App 539, 550-551; 400 NW2d 670 (1986). See also CJI 26:1:01. In contrast, the statutory prohibition against operating a chop shop, being of relatively recent vintage, does not carry an established body of interpretive case law. It provides in pertinent part:

> "Chop shop" means any area, building, storage lot, field, or any other premises or place where 1 or more persons are engaged or have engaged in altering, dismantling, reassembling, or in any way concealing or disguising the identity of a stolen motor vehicle or of any major component part of a stolen motor vehicle; or any area, building, storage lot, field, or any other premises or place where

there are 3 or more stolen motor vehicles present or where there are major component parts from 3 or more stolen motor vehicles present.

* * *

[A]ny person who shall knowingly own, operate, or conduct a chop shop or who knowingly aids and abets another person in owning, operating, or conducting a chop shop is guilty of a felony. [MCL 750.535a(1)(a), (2); MSA 28.803(1)(1)(a), (2).]

Even a superficial review of these two provisions suggests that both are aimed at protecting society from persons whose activities amount to profiteering from or otherwise furthering larcenous activity. The chop shop statute is a very specific provision intended to redress a very specific problem prevalent to an alarming degree in modern society. However, the activity proscribed by the chop shop statute clearly falls within the contours of the societal interest vindicated more generally by the receiving and concealing statute. A review of the legislative history of the chop shop statute, 1984 PA 407, is enlightening. The purpose behind enactment of that statute was twofold: (1) to facilitate convictions of chop shop operators, i.e., to relieve the prosecutor of the evidentiary burden of proving under the receiving or concealing statute that the defendant had knowledge that the particular vehicle or vehicle component was stolen or that the vehicle be identified as property previously stolen;[1] and (2) to enhance the punishment.[2]

---

[1] Because we are not required to do so in this particular case, we intimate nothing regarding what elements the prosecutor must in fact prove pursuant to MCL 750.535a; MSA 28.803(1). We compare and contrast the chop shop statute with the more general receiving and concealing statute only to gain an insight into the underlying intent of the Legislature.

[2] The pertinent legislative analysis provides:

Auto thefts appear to be an increasing problem in Michigan, totaling over a million dollars each year. Reportedly, 39% of

Accordingly, we conclude that the same societal interest is protected by both statutes, albeit in somewhat different ways. Even taking the most factually narrow view of the proscribed conduct possible, see *People v McKinley,* 168 Mich App 496; 425 NW2d 460 (1988), lv pending, it becomes apparent that the statutes do not protect against two distinct sources of harm nor uphold distinct social norms; rather the chop shop statute is aimed at a subset of conduct already encompassed by the more general statute.

Turning to the relationship of the criminal penalties provided for each offense, we note that a first felony offense under the receiving and concealing statute carries a maximum punishment of five years, or a fine of $2,500, or both. A first offense pursuant to the chop shop statute carries a

the cars are stolen by professionals for "chop shops" where the vehicles are broken down into component parts. In order to combat these operations, the police and courts have had to use the Michigan statute on receiving and concealing stolen property. To gain a conviction under this statute, however, it is necessary for the prosecution to prove both that the property was stolen and that the individual knew it was stolen. This has proven to be very difficult in chop shop situations where the vehicle has been dismantled. Some people thus believed that the law needed to be amended to deal more effectively with the chop shop problem.

In addition, the punishment under the receiving and concealing law is imprisonment for up to five years and a fine of $2,500, or both. Since chop shop crimes can be extremely profitable, this punishment, particularly the fine, was considered inadequate.

\* \* \*

By avoiding the proof problems encountered in the receiving and concealing statute, Public Act 407 will be a very effective tool in combating auto theft. The increased chance of conviction together with the harsher criminal penalties will make the operation of a "chop shop" a less attractive venture. The act also will encourage body shops to assure the legal ownership of vehicles that are to be disassembled for parts. [Senate Legislative Analysis, SB 175, January 3, 1985.]

maximum penalty of five years, or a $5,000 fine, or both. The legislative history indicates that a primary concern of the new legislation was to increase the penalty on a chop shop operator, thereby reducing the economic benefit derived or anticipated from chop shop ventures. Moreover, the chop shop statute includes a comprehensive, detailed procedure for restitution and for seizure and forfeiture of the stolen vehicle and the equipment used to conduct the chop shop business. The criminal penalties and other remedies indicate that the chop shop statute bears a hierarchical relationship to the receiving and concealing statute. In light of the problems posed by chop shops, the Legislature devised enhanced penalties and procedures in an attempt to tailor a specific solution. We find the multiple convictions entered in the instant case to be inconsistent with this intent. See also *People v Jeffery Davis,* 146 Mich App 282; 380 NW2d 82 (1985), lv den 424 Mich 867 (1986).

The prosecutor urges us to find no double jeopardy violation on the basis of the *Blockburger* [3] test, i.e., whether each statutory provision requires proof of a fact that the other does not. Although our Supreme Court "abandoned" the test in *Robideau, supra,* p 486, *Blockburger* enjoyed a limited revival in *Sturgis, supra,* p 409, to the extent that it sheds light on legislative intent. Because we have found the other indications of legislative intent precluding multiple punishment in this case to be weighty and unequivocal, an application of *Blockburger* would only be marginally significant.

In view of our conclusion that the multiple convictions in this case constitute double jeopardy, we vacate the conviction and sentence on the charge of possession of stolen property. See *People*

[3] *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

*v Campbell,* 165 Mich App 1, 7; 418 NW2d 404 (1987). Our remedy is without prejudice to defendant's conviction for operating a chop shop, which we hereby affirm.

Defendant makes one final contention, claiming that he received ineffective assistance of trial counsel. Although defendant supports his claim by reference to defense counsel's cross-examination of prosecution witnesses, we conclude, upon review of the record before us, that any deficiency in counsel's performance was not so serious as to give rise to a reasonable probability that, absent the errors, the jury may have had a reasonable doubt about defendant's guilt. See *People v Dalessandro,* 165 Mich App 569; 419 NW2d 609 (1988), lv pending. Defense counsel's statements regarding defendant's somewhat inculpatory communications in the course of the attorney-client relationship were made during allocution in an effort to influence the ultimate sentence. Because this was a matter of strategy, the finding of defendant's guilt already having been reduced to a conviction, we find no ineffective assistance arising from counsel's strategic decision. See *People v Armstrong,* 100 Mich App 423, 425-426; 298 NW2d 752 (1980).

Affirmed in part; reversed in part.