*In re* FORFEITURE OF ONE FRONT-END LOADER

Docket No. 122531. Submitted October 8, 1991, at Detroit. Decided January 21, 1992, at 10:20 A.M.

The Oakland County Prosecuting Attorney petitioned the Oakland Circuit Court for the forfeiture of a front-end loader and various other tools and equipment seized from Country Collision pursuant to MCL 750.535a; MSA 28.803(1), which proscribes the dismantling of stolen motor vehicles and allows forfeiture of motor vehicles used to convey or transport stolen motor vehicles and forfeiture of tools or implements used or designed for dismantling stolen motor vehicles. Blaine Smith, the owner of Country Collision, had pleaded guilty of receiving and concealing stolen property and of operating a facility that dismantled stolen motor vehicles. Smith responded to oppose the petition for forfeiture. The court, David F. Breck, J., granted summary disposition for Smith and ordered the return of the seized property, ruling that the property could not be forfeited because the prosecutor, by his own admission, could not prove that the front-end loader was used to convey or transport stolen motor vehicles onto or from the premises of Country Collision or that the tools and equipment were actually used in or designed for dismantling stolen motor vehicles. The prosecutor appealed.

The Court of Appeals *held:*

1. A motor vehicle, such as a front-end loader, used in conveying or transporting stolen motor vehicles is subject to forfeiture under MCL 750.535a(5)(c); MSA 28.803(1)(5)(c) regardless of whether transport or conveyance is onto, from, or within a facility in which stolen motor vehicles are dismantled.

2. Tools or equipment that have legitimate uses are subject to forfeiture under MCL 750.535a(5)(a); MSA 28.803(1)(5)(a) where they are used in the dismantling of stolen motor vehicles. Such use leads to a conclusion that the tools or equipment have been contrived or adapted for use in dismantling stolen motor vehicles.

Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Gay Secor*

*Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, and *Michael J. Modelski,* Chief, Appellate Division, for the people.

*Robert H. Roether,* for the respondents.

Before: MacKenzie, P.J., and Sawyer and Jansen, JJ.

Jansen, J. On November 5, 1986, the Oakland County Prosecuting Attorney filed a petition for forfeiture pursuant to the statute proscribing the dismantling of stolen motor vehicles, MCL 750.535a; MSA 28.803(1), seeking forfeiture of certain property seized from Country Collision on March 11, 1986. On October 26, 1988, the trial court heard arguments on the interpretation of paragraphs a and c of subsection 5 of MCL 750.535a; MSA 28.803(1). As worded at the time of the seizure, MCL 750.535a(5); MSA 28.803(1)(5) allowed the seizure and forfeiture of:

(a) Any engine, tool, machine, implement, device, chemical, or substance *used or designed for* altering, dismantling, reassembling, or in any other way concealing or disguising the identity of a stolen motor vehicle or any major component part.

\* \* \*

(c) A wrecker, car hauler, or any other motor vehicle that is used or has been used *to convey or transport* a stolen motor vehicle or major component part. [Emphasis added.]

The record indicates that Country Collision occupied a large plot of rural land containing a body shop. The shop was used both for legitimate business purposes and for the purpose of operating a "chop shop." In fact, on April 26, 1988, Blaine

Smith, the owner of Country Collision, pleaded guilty of nine counts of receiving and concealing stolen property over $100 and of one count of operating a chop shop.

The prosecutor argued that he would prove that a front-end loader was used to move stolen car parts "within the property." He also argued that, because Country Collision was used as a chop shop, all the tools in the shop, as well as several vehicles, were subject to forfeiture under subsections 5(a) and 5(c).

In interpreting paragraph a, the trial court held that for any tool or implement to be subject to forfeiture under this paragraph, there must be specific proof that the tool or implement was actually used in dismantling a stolen vehicle or that the item was designed for the use of altering or dismantling stolen property. In regard to paragraph c, the trial court held that there must be proof that the vehicle moved the stolen item beyond the confines of the chop shop, and not merely to move the stolen items within the confines of the chop shop.

An order reflecting these findings was entered on December 23, 1988. On January 13, 1989, the trial court granted the prosecutor's motion for reconsideration. However, after considering the briefs submitted by the parties, the trial court reaffirmed its prior decision regarding the interpretation of paragraphs a and c.

On September 29, 1989, the trial court granted Wilburn Smith and Blaine Smith's motion for summary disposition because, given the trial court's interpretation of paragraphs a and c, the prosecutor had to admit that none of the property seized would be subject to forfeiture. On October 10, 1989, the order granting summary disposition was entered, and the property seized was ordered

to be returned to the Smiths. The order also provided for a stay of sixty days to allow the prosecutor to appeal. On December 20, 1989, this Court granted a stay of further proceedings in the trial court.

The prosecutor appeals as of right from the trial court's October 10, 1989, order granting summary disposition for the Smiths. We reverse the order of the trial court and remand the case to the trial court for further proceedings.

The issue before this Court is one of statutory construction. Our primary goal in interpreting MCL 750.535a(5)(a) and (c); MSA 28.803(1)(5)(a) and (c) is to ascertain and give effect to the intent of the Legislature in enacting the statute. *People v Hawkins,* 181 Mich App 393, 396; 448 NW2d 858 (1989); *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). Because reasonable minds may differ with respect to the interpretation to be given this statute, judicial construction is appropriate. *Id.* The Court must construe the statutory language according to the common and approved usage of the language. *Murco, Inc v Dep't of Treasury,* 144 Mich App 777, 782; 376 NW2d 188 (1985). Resort to dictionary definitions is appropriate to achieve this result. *Id.*

In construing the chop shop statute, the first step is to determine the Legislature's intent in enacting the statute. The chop shop statute is a very specific provision intended to redress a very specific problem prevalent to an alarming degree in our society. *People v Allay,* 171 Mich App 602, 609; 430 NW2d 794 (1988). A review of the legislative history of the statute, 1984 PA 407, reveals a twofold purpose behind the statute: (1) to facilitate convictions of chop shop operators and (2) to enhance punishment. *Id.*

The *Allay* Court went on to note:

> The legislative history indicates that a primary concern of the new legislation was to increase the penalty on a chop shop operator, thereby reducing the economic benefit derived or anticipated from chop shop ventures. Moreover, the chop shop statute includes a comprehensive, detailed procedure for restitution and for seizure and forfeiture of the stolen vehicle *and the equipment used to conduct the chop shop business.* [*Allay,* p 611. Emphasis added.]

With this statutory purpose in mind, we must examine the commonly understood meaning of the words at issue, commencing with the words "convey or transport" as used in paragraph c. According to Black's Law Dictionary (4th ed), "transport" means "[t]o carry or convey from one place to another." In *Webster's New World Dictionary* (1974), "transport" is defined as "to carry from one place to another, especially over long distances," and "convey" is defined as "to take from one place to another; transport; carry."

Contrary to the holding of the trial court, we do not believe that the words "convey or transport" require movement either onto or from the premises of a chop shop. Movement "from one place to another" does not necessarily require movement over any particular distance or over any property or jurisdictional lines.

The Supreme Court, in *People v Martin,* 235 Mich 206; 209 NW 87 (1926), had occasion to construe a law that made it illegal to transport any still or brewing apparatus. *Id.,* pp 207-209. In doing so, the Court assumed that the Legislature used the word "transport" advisedly and with its commonly accepted meaning. *Id.,* p 209. The Court held that, as commonly understood, the defendant was transporting the prohibited article when he was "conveying it from one place to another." *Id.*

The statute at issue in *Martin* took no account of the distance traveled or whether the planned trip had been completed or abandoned. *Id.* "Transporting either for a long or short distance falls under its ban." *Id.*

The language of the chop shop statute, and subsection 5(c) in particular, likewise "takes no account of the distance traveled." *Martin,* p 209. Moreover, the trial court's ruling requiring movement onto or from the premises defeats the statute's purpose by exempting from forfeiture much of the "equipment used to conduct the chop shop business." *Allay, supra,* p 611.

Similarly, in *People v Ninehouse,* 227 Mich 480; 198 NW 973 (1924), a prosecution for unlawfully transporting whiskey, the Michigan Supreme Court quoted with approval from *Cunard Steamship Co v Mellon,* 262 US 100, 121; 43 S Ct 504; 67 L Ed 894 (1923), stating that "transportation comprehends any real carrying about or from one place to another." *Ninehouse,* p 483.

We believe that this interpretation of "transport" would further serve the purpose of the chop shop statute by allowing forfeiture of wreckers, car haulers, front-end loaders, and other heavy equipment used on the premises, thereby making car-theft operations less profitable. This would reduce the economic benefit derived or anticipated from chop shop ventures, a concern which was of primary importance in the enactment of the chop shop statute. *Allay, supra,* p 611.

We hold that the Legislature, in enacting the chop shop statute, intended to allow the forfeiture of vehicles such as front-end loaders when used to conduct chop shop business, without the requirement of conveying or transporting a stolen vehicle or part onto or from the chop shop premises. We are of the opinion that such a conclusion is consis-

tent with the legislative intent behind the chop shop statute, including the primary concern of increasing the penalty on a chop shop operator to ensure that the operator does not profit from nefarious conduct.

We now turn to the words "used or designed" as contained in paragraph a of subsection 5, MCL 750.535a(5)(a); MSA 28.803(1)(5)(a). We believe that the trial court's interpretation of this paragraph, which required specific proof that a tool or implement was specifically designed for use in altering or dismantling stolen property or was actually used for chop shop purposes, was erroneous and contrary to legislative intent.

While these terms, as employed in the chop shop statute, have not been addressed by any appellate court of this state, we find instructive the law in the area of possession of burglars' tools, MCL 750.116; MSA 28.311, which requires as an element proof that the tools be "adapted and designed" for burglary. *People v Dorrington,* 221 Mich 571, 574; 191 NW 831 (1923); *People v Murphy,* 28 Mich App 150, 157; 184 NW2d 256 (1970); *People v Wilson,* 180 Mich App 12, 14; 446 NW2d 571 (1989).

The term "designed" has been defined to mean "contrived or taken to be employed for such purpose." *Dorrington,* p 574; *Murphy,* p 157; *Wilson,* p 14. This definition has been adopted as the definition of "designed" in Black's Law Dictionary (4th ed), and was relied on in *Dorrington, supra.*

This Court, in *Murphy,* noted that, although the items seized from the defendant may have had a legitimate purpose, they were items commonly used in burglaries. *Id.,* p 158. It was the defendant's possession of these items, coupled with the circumstances surrounding his arrest, that war-

ranted a jury's finding that the items were "contrived and adapted for breaking and entering." *Id.*

Similarly, as in *Murphy,* we believe that whether the chop shop owner possessed the requisite knowledge and intent to make all tools in his collision shop available for the dismantling of stolen cars, thus making them designed, contrived, or taken to be employed for chop shop purposes, is a question to be determined at the forfeiture hearing. To require proof that each tool seized was actually used or specifically manufactured for chop shop purposes defeats the legislative purpose of making chop shops unprofitable, thereby deterring car thefts. Once a garage owner decides to operate a chop shop, and decides to make his tools and equipment available for chop shop purposes, he has, in effect, designed or contrived to employ them for chop shop use.

It is our opinion that to require proof that each tool or device seized was actually used to disassemble, reassemble, or conceal the identity of a stolen motor vehicle would constitute an insurmountable obstacle. We do not believe, given the purpose of the statute, that the Legislature intended such a result.

We therefore reverse the order of the trial court and remand the case for further proceedings consistent with this opinion. We do not retain jurisdiction.