*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
October 15, 2020

v

No. 349026
Oakland Circuit Court
LC No. 2018-267265-FH

BRYAN ANGELO THOMPSON,

Defendant-Appellant.

Before: SWARTZLE, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of operating a chop shop. Defendant challenges the trial court's denial of his motion for a directed verdict, the sufficiency of the evidence to support his conviction, and the adequacy of the jury instructions. Because defendant's arguments are without merit and the evidence amply supported his conviction, we affirm.

## I. BACKGROUND

On May 1, 2018, police were dispatched to a women's clothing store located at 22121 Coolidge Highway, in Oak Park, to investigate a report of a stolen Dodge Ram. Upon arrival, officers saw the stolen Ram parked partially inside and partially outside the loading bay in the rear of the store. Defendant was standing near the driver's side of the vehicle, and Jonathan Henley was standing on its passenger side. Two other stolen vehicles, an Audi and a Toyota Camry, were parked nearby. After detaining defendant and Henley, police officers found evidence inside and near the Ram, as well as inside the Audi, that implicated defendant in the operation of a chop shop.

Police discovered that the Ram was still owned by Chrysler and that it had been stolen from a secondary location. The VIN sticker and the federal-identification sticker on the Ram had been fraudulently altered. A police detective found inside the Ram various tools used to retag stolen vehicles. A toolbox in the vehicle contained razorblades, scissors, screwdrivers, a heat gun, and drill bits. There was shiny laminate paper that was consistent with the paper on which the fraudulent VIN stickers were printed. There was also a large jug of "Goo Be Gone," a product used to remove sticky material from a surface without damaging it. There was a battery-powered drill set, microfiber-cleaning cloths used to wipe away substances, and license-plate placards

typically obtained from an automobile dealership. A second toolbox inside the Ram contained picks, scissors, screwdrivers, wire cutters, wire strippers, nail files, industrial-strength adhesive, a paper punch, flashlights, batteries, electrical tape, and razor blades. Documents found inside the Ram carried defendant's name on them.

A cabinet near the Ram contained tools used to remove windshields, as well as caulk guns used to adhere windshields back onto vehicles. A police detective testified that windshields are removed to access the VIN number on a vehicle so that it could be altered. Near the passenger side of the Ram, police found an expensive printer of the type used to print VIN stickers on adhesive paper. On the printer was a white grocery bag that contained the true VIN sticker and federal-identification sticker that had been removed from the Ram; the white bag also contained rags that smelled of adhesive remover. The true VIN sticker in the white bag matched the confidential VIN that a police detective had obtained from the Ram. Also, inside the white bag, police found paperwork from Ground Effects, the facility from which the Ram was stolen. Further, the white bag contained a used razorblade, which could be utilized to remove a VIN sticker.

Police also discovered incriminating evidence inside the Audi, including paperwork to which only a vehicle manufacturer whould have access. The trunk of the Audi contained bags, computers, electronic devices, two thumb drives, two small toolboxes, and large amounts of cash, including more than $10,000 in $100 bills. There were duffel bags containing paperwork with defendant's name. A backpack contained several key fobs, including key fobs for vehicles that were not at the scene. A duffel bag in the Audi also contained an IRS document consistent with a document that was on one of the thumb drives, providing an employer-identification number for Premier Home Designs, LLC, with defendant's name on it and showing an address on Tireman Avenue in Detroit. Also, in the Audi was an Illinois registration for the Ram listing its fraudulent VIN; the registration was to Premier Home Designs, LLC, with an address in Chicago, Illinois. The Audi trunk also contained paper with fraudulent VIN stickers for the Ram.

Finally, the prosecutor presented evidence of defendant's relationship with or control over the address at which the Ram was present, 22121 Coolidge. Defendant registered the Audi to that address. Also, while defendant was out on bond, police saw defendant alone at the business as the only person there to assist customers.

The jury convicted defendant of operating a chop shop in violation of MCL 750.535a(2). The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to a term of 2 to 20 years in prison for that conviction. This appeal followed.

## II. ANALYSIS

### A. MOTION FOR A DIRECTED VERDICT

Defendant first argues that the trial court erroneously denied his motion for a directed verdict. "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

At the close of the prosecutor's proofs, defendant moved for a directed verdict on the ground that the Audi and the Camry were not within the curtilage of 22121 Coolidge, the address listed in the felony information. The prosecutor opposed the motion, noting that the statutory definition of a chop shop is broad and is not limited to the curtilage of a particular address. The trial court agreed with the prosecutor's argument, found that a question of fact existed for the jury, and denied defendant's motion.

On appeal, defendant again argues that, because the three vehicles at issue were not within the curtilage of the same address, they cannot be considered part of a chop shop. Specifically, defendant contends that the Audi and the Camry were not within the curtilage of 22121 Coolidge, the address listed in the felony information and the address where the Ram was located, and that the prosecutor thereby failed to present sufficient evidence establishing the operation of a chop shop. Defendant's argument is unavailing.

MCL 750.535a(2) provides:

[A] person who knowingly owns, operates, or conducts a chop shop or who knowingly aids and abets another person in owning, operating, or conducting a chop shop is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $250,000.00, or both.

MCL 750.535a(1)(b) defines the term "chop shop" as follows:

(b) "Chop shop" means any of the following:

(*i*) Any area, building, storage lot, field, or other premises or place where 1 or more persons are engaged or have engaged in altering, dismantling, reassembling, or in any way concealing or disguising the identity of a stolen motor vehicle or of any major component part of a stolen motor vehicle.

(*ii*) Any area, building, storage lot, field, or other premises or place where there are 3 or more stolen motor vehicles present or where there are major component parts from 3 or more stolen motor vehicles present.

Initially, defendant fails to address adequately the fact that MCL 750.535a(1)(b) provides two alternative definitions of a chop shop. Although the definition in Subsection (b)(*ii*) requires the presence of three or more stolen vehicles, the definition in Subsection (b)(*i*) does not. Defendant fails to provide any discernible argument addressing whether the prosecutor presented sufficient evidence that he operated a chop shop under the definition in Subsection (b)(*i*). Failure to brief an issue constitutes abandonment. *People v Kent*, 194 Mich App 206, 210; 486 NW2d 110 (1992). Defendant's argument fails for that reason alone.

Even if the Audi and the Camry were not within the curtilage of 22121 Coolidge, and even if the alternative definition of a chop shop in MCL 750.535a(1)(b)(*i*) was not satisfied, defendant's argument still fails. Contrary to defendant's argument, there is no requirement in Subsection (b)(*ii*) that all three vehicles be within the curtilage of the same address. Rather, Subsection (b)(*ii*) defines a chop shop as "[a]ny area, building, storage lot, field, or other premises or place where there are

3 or more stolen motor vehicles present or where there are major component parts from 3 or more stolen motor vehicles present." Even if the Audi and the Camry were not within the curtilage of 22121 Coolidge, photographs admitted into evidence at trial show that those two vehicles were in close proximity to the Ram that was parked at that address. Viewing the evidence in the light most favorable to the prosecutor, a rational trier of fact could find that the three stolen vehicles were within the same "area . . . premises or place," thus satisfying the definition of a chop shop in MCL 750.535a(1)(b)(*ii*).

## B. JURY INSTRUCTIONS

Defendant next argues that the trial court erred when instructing the jury regarding the operation of a chop shop. Before reading instructions to the jury, the trial court discussed the proposed jury instructions with the prosecutor and defense counsel. The trial court noted that the parties had agreed upon an instruction regarding the operation of a chop shop, and defense counsel responded, "Yes, your Honor." After the trial court read to the jury the final instructions, including those regarding the operation of a chop shop, the trial court asked the attorneys if they were satisfied with the instructions as read, and defense counsel responded, "Yes, your Honor." By expressly approving the jury instructions, defendant waived review of any alleged instructional error. See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).

On appeal, defendant contends that he did not waive the instructional issue because, when the trial court read the jury instructions, it had already denied defendant's motion for a directed verdict. Defendant cites no authority to support this novel argument. The motion for a directed verdict concerned the sufficiency of the evidence, not the propriety of the jury instructions. By expressly approving the jury instructions, defendant waived the instructional issue.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the prosecutor presented insufficient evidence to support his conviction of operating a chop shop. He argues that the prosecutor presented no evidence that he knew the Audi was stolen, and that without a third stolen vehicle, he cannot be convicted of operating a chop shop. Defendant further contends that there was no evidence that the Audi was altered or dismantled at 22121 Coolidge or that defendant intended to alter or dismantle the Audi at that location. Defendant's argument is without merit.

We review de novo the sufficiency of the evidence to support a criminal conviction. *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). When reviewing a defendant's challenge to the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). "A prosecutor need not present direct evidence of a defendant's guilt. Rather, circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (cleaned up). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. Further, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution." *Id*.

### 1. MCL 750.535a(1)(b)(*i*)

As explained earlier, MCL 750.535a(1)(b) sets forth two alternative definitions of a chop shop, and the trial court in this case instructed the jury on both definitions. The definition in MCL 750.535a(1)(b)(*i*) does not require the presence of three stolen vehicles but rather that the defendant "engaged in altering, dismantling, reassembling, or in any way concealing or disguising the identity of *a* stolen motor vehicle or of any major component part of *a* stolen motor vehicle." (Emphasis added.) The use of the singular term "a stolen motor vehicle" requires proof that the defendant engaged in the prohibited conduct with respect to only a single motor vehicle that had been stolen.

The prosecutor presented evidence that the Audi, the Ram, and the Camry were all stolen vehicles. The VIN sticker and federal identification sticker on the Ram had been fraudulently altered. Documents inside the Ram carried defendant's name on them, and police found tools and supplies inside the Ram that are used to retag stolen vehicles. Defendant was found standing next to the stolen Ram, and the prosecutor presented evidence of defendant's relationship with or control over the address at which the Ram was present. Viewing this evidence in the light most favorable to the prosecutor, a rational trier of fact could find that defendant knowingly owned, operated, or conducted a chop shop at 22121 Coolidge under the definition in MCL 750.535a(1)(b)(*i*), i.e., that he was engaged in altering, dismantling, reassembling, or otherwise concealing or disguising the identity of the stolen Ram. It thus does not matter whether defendant knew that the Audi was stolen or whether the Audi was altered or disguised at that same location. Defendant's argument on this issue therefore fails.

Defendant's argument on this issue is unavailing for an additional reason. To be convicted of operating a chop shop, a defendant must knowingly own, operate, or conduct a chop shop, or knowingly aid and abet another person in doing so. See MCL 750.535a(2). But there is no statutory requirement that the defendant possess knowledge that each vehicle at the chop shop is stolen. Indeed, the chop shop statute was enacted, in relevant part, "to relieve the prosecutor of the evidentiary burden of proving under the receiving or concealing statute that the defendant had knowledge that the particular vehicle or vehicle component was stolen or that the vehicle be identified as property previously stolen." *People v Allay*, 171 Mich App 602, 609; 430 NW2d 794 (1988), superseded in part on other grounds by 2002 PA 720. In short, the prosecutor was required to prove that defendant knowingly owned, operated, or conducted a chop shop, or that he knowingly aided and abetted another person in doing so, MCL 750.535a(2), but was not required to prove defendant's knowledge that each vehicle at the chop shop was stolen, *Allay*, 171 Mich App at 609.

### 2. MCL 750.535a(1)(b)(*ii*)

Further, the prosecutor presented sufficient evidence at trial to prove that defendant operated a chop shop as defined in MCL 750.535a(1)(b)(*ii*). The prosecutor presented sufficient evidence for a rational trier of fact to conclude that the Audi, the Camry, and the Ram were all present in the same area, place, or premises, and the prosecutor was not required to prove defendant's knowledge that each vehicle was stolen. See *Allay*, 171 Mich App at 609. Rather, the prosecutor was required to prove that three stolen vehicles were present. See MCL 750.535a(1)(b)(*ii*). There was undisputed evidence that the Audi, the Ram, and the Camry were

all stolen vehicles. Also, in addition to the incriminating evidence found inside and near the Ram, police found incriminating evidence inside the Audi. Overall, the prosecutor presented sufficient evidence from which a rational trier of fact could find that defendant knowingly owned, operated, or conducted a chop shop under the definition in MCL 750.535a(1)(b)(*ii*).

## D. MOTION TO SUPPRESS EVIDENCE

Lastly, defendant argues that the trial court erroneously denied his pretrial motion to suppress evidence. We review for clear error a trial court's factual findings made when ruling on a motion to suppress evidence. *People v Woodard*, 321 Mich App 377, 382; 909 NW2d 299 (2017). Clear error exists when this Court "is left with a definite and firm conviction that a mistake has been made." *People v Barbarich*, 291 Mich App 468, 471; 807 NW2d 56 (2011). "We review de novo whether the Fourth Amendment was violated and whether the exclusionary rule applies. We also review de novo the trial court's ultimate decision on a motion to suppress." *Woodard*, 321 Mich App at 382-383 (citations omitted).

Before trial, defendant filed a motion to suppress evidence. He argued that the police had exceeded the scope of the search warrant for the premises at 22121 Coolidge because the Audi and the Camry were parked in front of the adjoining lot, 22125 Coolidge. Therefore, defendant argued, the exclusionary rule barred admission of any evidence obtained from the Audi and the Camry. Defendant attached to his motion a copy of the search warrant as well as photographs of the vehicles at the scene. Defendant did not request an evidentiary hearing.

In response to defendant's motion, the prosecutor admitted that the Audi and the Camry were parked on the curtilage of 22125 Coolidge, i.e., the lot adjoining 22121 Coolidge.[1] But the prosecutor argued that defendant lacked standing to contest the searches because he was not the registered owner of the businesses and because the vehicles at issue were stolen. Further, the prosecutor argued that defendant lacked a reasonable expectation of privacy with respect to stolen vehicles, and that police had authority to impound the stolen vehicles and conduct an inventory search.

At the hearing on defendant's motion to suppress, the trial court ruled that defendant lacked standing to challenge the search of the stolen vehicles, and that police had authority to impound the stolen vehicles and conduct an inventory search. On appeal, defendant argues that he had standing to contest the searches and that the searches exceeded the scope of the search warrant for 22121 Coolidge.

"Both the Michigan and United States Constitutions prohibit unreasonable searches and seizures." *People v Powell*, 235 Mich App 557, 560; 599 NW2d 499 (1999), citing Const 1963, art 1, § 11 and US Const, Am IV. "The test to determine whether a person has a protected privacy right under the Fourth Amendment or art 1, § 11 is whether the defendant had an expectation of

---

[1] Aside from the prosecutor's concession on this point, there was virtually no factual development during the litigation of the motion to suppress regarding on which business lot the vehicles were located, given that there was no evidentiary hearing and the parties submitted scant evidence in connection with this motion.

privacy in the object of the search and seizure and whether the expectation is one that society recognizes as reasonable." *Id*. at 560. The defendant bears the burden of establishing standing. *Id*. at 561. "An expectation of privacy is legitimate only if the individual exhibited an actual, subjective expectation of privacy and that actual expectation is one that society recognizes as reasonable." *People v Taylor*, 253 Mich App 399, 404; 655 NW2d 291 (2002). "Courts must consider the totality of the circumstances in determining whether a defendant had a legitimate expectation of privacy in the area searched." *People v Mead*, 503 Mich 205, 213; 931 NW2d 557 (2019).

Our Supreme Court has taken note of the United States Supreme Court's disparagement of "the idea that a person present in a stolen automobile at the time of a search may object to the lawfulness of the search of the automobile." *People v Smith*, 420 Mich 1, 28; 360 NW2d 841 (1984) (cleaned up). Defendant lacked standing to contest the search of a stolen vehicle. See *People v Kramer*, 108 Mich App 240, 247; 310 NW2d 347 (1981).

Defendant does not contest the fact that the Audi and the Camry were stolen. Defendant nonetheless asserts standing to challenge the searches of those stolen vehicles, claiming that he did not know the Audi was stolen and suggesting that he purchased the Audi in good faith. But defendant presented no evidence at the time of the motion hearing to support his claim that he possessed standing. Nor did defendant make a timely request for an evidentiary hearing below; he only belatedly made what could at best be described as a half-hearted request for an evidentiary hearing *after* the trial court had already ruled against him. On appeal, defendant relies on evidence presented at trial, i.e., after the denial of his motion to suppress, to support his standing argument. This Court's review of the trial court's ruling denying defendant's motion to suppress is limited to the information known to the trial court when it denied the motion. See *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999). The trial court properly determined that defendant failed to present evidence establishing that he possessed standing to challenge the searches.

Given that defendant lacked standing to challenge the searches, it is unnecessary to reach the prosecutor's alternative contention that the searches of the vehicles comprised valid inventory searches. Moreover, the pertinent facts necessary to resolve that argument were not well developed with evidence at the time of the trial court's ruling on the motion to suppress. We find it impossible to analyze the inventory-search issue without using evidence presented at trial, which, as noted, is inappropriate.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Stephen L. Borrello