*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MARVIN LEE KNOX,

      Defendant-Appellant.

UNPUBLISHED
August 20, 2019

No. 342165
Wayne Circuit Court
LC No. 17-005170-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MARVIN LEE KNOX,

      Defendant-Appellant.

No. 342179
Wayne Circuit Court
LC No. 17-005172-01-FC

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

Defendant appeals his convictions resulting from a crime spree involving a series of carjackings committed during the night of May 22 and 23, 2017, in Detroit. Defendant was tried jointly in three separate cases that were consolidated for trial. In LC No. 17-005170-01-FC, the jury convicted defendant for offenses against Ricardo Lowe, including carjacking, MCL 750.529a, armed robbery, MCL 750.529, receiving or concealing a stolen firearm, MCL 750.535b, unlawfully driving away an automobile (UDAA), MCL 750.413, receiving or concealing a stolen motor vehicle, MCL 750.535, carrying a weapon with unlawful intent, MCL 750.226, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant to prison terms of 10 to 25 years for the carjacking and armed robbery convictions, 2 to 10 years for his receiving or concealing a stolen firearm conviction, and one to five years each for the UDAA, receiving or concealing a stolen

-1-

motor vehicle, and carrying a weapon with unlawful intent convictions, to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals those convictions and sentences as of right in Docket No. 342165. We affirm.

In LC No. 17-005172-01-FC, the jury convicted defendant of offenses against Nicholas Wilder, including carjacking, UDAA, and receiving or concealing a stolen motor vehicle. The trial court sentenced defendant to 15 to 30 years in prison for the carjacking conviction and one to five years each for the UDAA and receiving or concealing convictions. Defendant appeals those convictions and sentences as of right in Docket No. 342179. We affirm.

The jury also convicted defendant in LC No. 17-005174-01-FC of offenses against Kasan Belgrave, including carjacking, unarmed robbery, MCL 750.530, UDAA, receiving or concealing a stolen motor vehicle, fourth-degree arson, MCL 750.75(1)(a)(*i*), and preparation to burn, MCL 750.79(1)(c)(*i*). The trial court sentenced defendant to prison terms of 10 to 25 years for the carjacking conviction, 3 to 15 years for the unarmed robbery conviction, and one to five years each for the remaining convictions. Defendant has not appealed his convictions and sentences in that case. Therefore, to the extent that defendant's arguments involve that case, they are not properly before this Court, MCR 7.204(B), and we decline to consider them.

## I. FACTS

At approximately 2:00 a.m. on May 23, 2017, Lowe had just returned home from work and parked his car, a gray 2005 Malibu hatchback, in front of his house in Detroit. As Lowe exited his Malibu, a white Ford Explorer pulled up beside his car and defendant got out of the passenger's side of the Explorer, approached Lowe, and pointed a black handgun at him. Lowe saw defendant's face illuminated by the porch lights from nearby houses. Lowe followed defendant's instructions and put his car keys and belongings on the driver's seat of the Malibu, then backed away. Lowe had a silver or nickel-plated .380 caliber firearm inside the Malibu's glove box. The Explorer drove off and defendant followed. Lowe's girlfriend called Lowe's cellphone and thinking she contacted him asked where he was. A male answered and stated that he was the person who took Lowe's belongings. Meanwhile, Lowe called 911 once inside his home and gave a description of the perpetrator. Lowe later identified defendant from a photograph array as the person who took his belongings.

At around 3:00 a.m. on May 23, 2017, a silver four-door sedan bumped Wilder's blue 2003 Subaru from behind while stopped on John R Street, at the light for Six Mile Road, in Detroit. Wilder exited his vehicle to inspect it for damage. The driver, a woman, remained in the sedan with her head down while one man exited from the front passenger seat and approached slowly with a chrome or silver handgun pointed at Wilder's chest. Wilder could not recall what the man said but Wilder let him take his car. When the man looked around at the traffic, Wilder took off running. He saw the man drive off in his Subaru with the woman following in the sedan. Wilder called the police from a nearby gas station and gave a description of defendant. When presented a photographic array, Wilder could not identify defendant.

That same day at approximately the same time, Belgrave drove his mother's blue 2010 Honda Civic on Six Mile Road, near Livernois Avenue, in Detroit at about 30 miles per hour

when a car from behind bumped his mother's car. Belgrave pulled over and slowed down while looking back. The other vehicle pulled around the Civic's driver side and Belgrave saw a woman in the driver's seat, a man in the passenger's seat, and another man—whom he identified as defendant—in the backseat. Belgrave made eye contact with the car's occupants. The car turned right onto Oak Drive and Belgrave followed. When the car parked, Belgrave parked in front of it, left his keys in and exited. Two men exited the other vehicle. Belgrave met the man who sat in the front passenger seat and defendant stood 10 feet away near the rear of the Civic and walked in circles. The street lights illuminated the area so that Belgrave could see defendant's face and appearance. As Belgrave examined the Civic for damage, defendant and the other man started to run toward Belgrave so he ran away leaving his wallet containing his identification, credit card and shopping cards inside the car, and his gold-plated alto saxophone and a pair of Nike shoes in the car's trunk. When he jumped a fence at a nearby elementary school, he looked back and saw that the Civic was gone. Belgrave called the police from a gas station. Later he gave the police a statement in which he described defendant. Two days later Belgrave identified defendant in a photographic array.

The police apprehended defendant on May 25, 2017, around 2:00 a.m. in relation to their investigation of a report of a white Explorer that had been reported carjacked on fire near Brock Avenue and Bringard Drive and a blue Honda Civic that had been reported stolen in the vicinity. Officer Dondre Penn waited in an unmarked police car and saw defendant get dropped off at the Civic where he entered the car, started it, proceeded to start the Civic on fire, and then walk away. Detective John Metiva testified that he apprehended defendant nearby after hearing Officer Penn's broadcasts on the radio. When he patted defendant down for safety, he recovered a Honda key with a blue cloth key ring featuring puppy paws, and a red Bic lighter.

At the Detroit Detention Center, after being informed of his constitutional rights and acknowledging that he understood his rights, among other things, defendant admitted that he participated in carjacking vehicles with others, set the Civic on fire to hide his fingerprints, and pawned Belgrave's saxophone for $50 dollars. The prosecution charged defendant for the offenses related to the Lowe, Wilder, and Belgrave carjacking incidents.

After the parties' closing arguments and the trial court's instructions, the jury began its deliberations around 3:43 p.m. but did not reach a verdict. The jury resumed its deliberations the next morning. At 9:52 a.m., the jury requested transcripts of Lowe's trial testimony. Before informing the parties' counsel, the trial court responded to the request by instructing the jury as follows:

> [P]lease, rely on your collective memories. It will take approximately two weeks for the court reporter to produce a transcript of Mr. Lowe's testimony.

The jury deliberated briefly and advised the trial court at 9:56 a.m. that it had reached a verdict. The jury convicted defendant on all of the charged offenses.

## II. CLAIMS OF ERROR REGARDING JURY REQUESTS

Defendant argues that the trial court violated MCR 2.513(P) in its response to the jury's request for a transcript of Lowe's testimony. Defendant, however, did not object to the trial

court's response to the jury's request. Because defendant made no objection to the trial court's response at trial, he forfeited this claim of error. MCR 2.512(C); *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Forfeiture of a claimed error results from the failure to make the timely assertion of a right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "A forfeited, nonconstitutional error may not be considered by an appellate court unless the error was plain and it affected defendant's substantial rights." *People v Gonzalez*, 468 Mich 636, 643; 664 NW2d 159 (2003), citing *People v Grant*, 445 Mich 535, 552-553; 520 NW2d 123 (1994). To establish plain error, defendant bears the burden of showing that: 1) an error occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To establish that an error affected his substantial rights, defendant must show that he suffered "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

MCR 2.513(P) provides, in relevant part:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

Our Supreme Court explained in *Carter*, that a "defendant does not have a right to have a jury rehear testimony. Rather, the decision whether to allow the jury to rehear testimony is discretionary and rests with the trial court." *Carter*, 462 Mich at 218 (citations omitted). Therefore, we review "decisions regarding the rereading of testimony for an abuse of discretion." *People v Davis*, 216 Mich App 47, 56; 549 NW2d 1 (1996). If the jury requests to rehear testimony, the trial court errs if it instructs the jury in a manner that forecloses an opportunity to review a transcript by telling the jury that the transcripts will not be typed for some weeks into the future and that they must rely on their collective memories to resolve any issues. *Carter*, 462 Mich at 213.[1] In *Carter*, our Supreme Court stated in a footnote:

---

[1] *Carter* involved MCR 6.414(H), which was repealed in 2011 and replaced by MCR 2.513(P). However, the substantive language at issue is largely the same; the former rule stated:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence, the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may order the jury to deliberate further without the requested review, so long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed. [*Carter*, 462 Mich. at 210–211.]

While it is true that trial transcripts often are not prepared until well after trial, we caution against instructing the jury in this manner as such instruction forecloses to the jury the possibility of later reviewing the requested testimony, e.g., by having the court reporter read back the testimony, and consequently, violates the court rule. However, we also note that, given that the jury made the request for the testimony of four witnesses only fifteen minutes into deliberations, the trial court could have properly refused the request and instructed the jury to continue deliberating had it done so in a manner which did not foreclose the possibility of having the testimony reviewed at a later time. [*Id*. at 213-214 n 10.]

In this case, on the first full day of deliberations, the jurors asked to review Lowe's testimony at 9:52 a.m., and the trial court instructed them to rely on their collective memories and that it would take about two weeks to produce a transcript of Lowe's testimony. The trial court did not inform the jury that it could ask for the transcript again after more deliberation if it still believed necessary the review of the testimony. In so doing, the trial court plainly erred and violated MCR 2.513(P) because a reasonable jury would likely have considered the possibility of having the testimony or evidence reviewed at a later time foreclosed.

The prosecution concedes that the trial court plainly violated MCR 2.513(P), by failing to inform the jury that it could ask again later to review Lowe's testimony if after more deliberation it still needed to review it. The prosecution, however, does not concede that the trial court's response completely foreclosed the possibility. The prosecution argues that, even if the trial court erred, defendant suffered no prejudice because the jury returned its verdict a mere four minutes later. We agree that defendant has failed to establish prejudice resulting from the trial court's plain error.

The fact that the jury reached its verdict four minutes after the trial court instructed it to rely on its collective memory is indicative that the jury lacked any difficulty coming to its decision. Moreover, defendant does not point to any testimony that, if reheard, would have made a difference in the outcome of the trial. The record reflects that Lowe repeatedly identified defendant as the perpetrator and he explained that he stood no more than four feet from defendant in a well-lit area that allowed him to see defendant clearly and look him in the eye. Lowe's testimony also connected defendant to the gun and vehicle used in the offense against Wilder. Defendant has not met his burden of showing that the plain error affected his substantial rights. Accordingly, defendant is not entitled to a new trial.

In a related claim, in his Standard 4 brief,[2] defendant argues that the trial court erred by refusing the jury's request, during deliberations, to review a police report containing Lowe's description of the perpetrator. During deliberations, jurors may only consider the evidence presented to them in open court. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). During trial, a detective referred to his police report to refresh his recollection, but the report was

---

[2] Defendant raised additional issues in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

neither offered as evidence nor admitted by the trial court into evidence. Therefore, the trial court did not err by refusing to provide the police report to the jury.

Defendant also argues in his Standard 4 brief that the trial court erred by communicating with the jury ex parte when it informed the jury that the police report could not be provided, thereby denying defense counsel an opportunity to object. Our Supreme Court has explained that "communication with a deliberating jury can be classified into one of three categories: substantive, administrative, or housekeeping." *People v France*, 436 Mich 138, 142-143; 461 NW2d 621 (1990).

> Administrative communications include instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations. An administrative communication carries no presumption [of prejudice]. The failure to object when made aware of the communication will be taken as evidence that the administrative instruction was not prejudicial. [*Id.* at 143.]

In this case, the trial court's communication regarding the police report constituted an administrative communication. The trial transcript indicates that the court informed the parties of the jury's requests after it responded to them. The parties did not object when made aware of the trial court's administrative communications with the jury regarding the availability of evidence or its encouragement that the jury continue its deliberations. The parties' counsel's failure to object evidences a lack of prejudice. Moreover, defendant cannot establish any prejudice since he cannot show any basis for an objection because the police report had not been admitted into evidence, and therefore, could not have been provided. *Budzyn*, 456 Mich at 88.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant further argues in his Standard 4 brief that defense counsel provided ineffective assistance by failing to offer the police report containing Lowe's description of the perpetrator into evidence. We disagree.

A defendant preserves the issue of ineffective assistance of counsel by raising the issue in a motion for a new trial or a motion for a *Ginther*[3] hearing in the trial court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant failed to raise the issue in a motion for a new trial or a *Ginther* hearing. Therefore, the issue is unpreserved.

This Court reviews an unpreserved issue of ineffective assistance of counsel for "mistakes apparent on the record." *Id.* at 410. "A claim of ineffective assistance of counsel is a mixed question of law and fact." *Id.* (citation omitted.) We review the trial court's findings of fact, if any, for clear error, and review de novo its conclusions of law. *Id.* "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We also review de novo

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

constitutional issues. *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003). To show ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Generally, police reports are inadmissible hearsay. MRE 801(c), 803(8); *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011); *People v Herndon*, 246 Mich App 371, 410-411; 633 NW2d 376 (2001). Defendant fails to explain how the police report could have been admitted despite the hearsay rule. Given defendant's failure to cite any rule of evidence under which the police report could have been admitted, he cannot establish that defense counsel's failure to seek its admission lacked objective reasonableness. *Trakhtenberg*, 493 Mich at 51.

Further, the record establishes that although the trial court did not admit the police report, the detective testified regarding his memory of Lowe's description of the perpetrator, which differed from defendant's appearance at trial. In closing argument, defense counsel argued that Lowe's immediate description to the police did not match defendant. Given the body of evidence at trial, the admission of the police report containing Lowe's description would only have been cumulative. Although the jury requested review of the document during deliberations, the trial court properly denied the request because it had not been admitted as evidence. Defendant has neither established that defense counsel's performance fell below an objective standard of reasonableness nor that but for counsel's performance a reasonable probability exists that the outcome would have been different. We find no mistake apparent in the record. Accordingly, defendant's claim of ineffective assistance of counsel in this regard fails. *Id*.

Defendant also argues that defense counsel provided ineffective assistance by failing to request a jury instruction on the defense of duress. Because defendant did not raise this claim in a motion for a new trial in the trial court or a *Ginther* hearing, our review is limited to errors apparent from the record. *Petri*, 279 Mich App at 410.

" 'A criminal defendant is entitled to have a properly instructed jury consider the evidence against him.' " *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (citation omitted). The jury instructions "must include all the elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *Id*. at 240 (citation omitted). A trial court "may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Id*. (citation omitted.) But a trial court is not required to instruct the jury on an affirmative defense unless the defendant has produced some evidence on all elements of the defense. *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013).

In *People v Lemons*, 454 Mich 234, 245-247; 562 NW2d 447 (1997) (some citations omitted), our Supreme Court explained:

Duress is a common-law affirmative defense. It is applicable in situations where the crime committed avoids a greater harm. The reasons underlying its existence are easy to discern:

> The rationale of the defense of duress is that, for reasons of social policy, it is better that the defendant, faced with a choice of evils, choose to do the lesser evil (violate the criminal law) in order to avoid the greater evil threatened by the other person.

In order to properly raise the defense, the defendant has the burden of producing "some evidence from which the jury can conclude that the essential elements of duress are present." In *People v Luther*, 394 Mich 619, 623; 232 NW2d 184 (1975), we held that a defendant successfully carries the burden of production where the defendant introduces some evidence from which the jury could conclude the following:

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

> B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

> C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

> D) The defendant committed the act to avoid the threatened harm.

The Court explained further that "the threatening conduct or act of compulsion must be 'present, imminent, and impending[, that] [a] threat of future injury is not enough,' and that the threat 'must have arisen without the negligence or fault of the person who insists upon it as a defense.' " *Id.* at 247 (citations omitted and alteration in the original). Other factors "may cause a defendant to forfeit the defense of duress, i.e., where the defendant 'does not take advantage of a reasonable opportunity to escape, where that can be done without exposing himself unduly to death or serious bodily injury,' and where the defendant 'fails to terminate his conduct as soon as the claimed duress . . . ha[s] lost its coercive force.' " *Id.* at 247 n 18 (citation omitted and alteration in the original).

Defendant argues that his male accomplice's conduct sufficed to warrant requesting a duress defense instruction. The record in this case, however, does not support a duress defense. The evidence presented at trial regarding the carjacking of Wilder's Subaru and the carjacking of Belgrave's mother's Civic did not establish a duress defense. Wilder only interacted with one male perpetrator, whom he could not identify. Defendant claimed that Wilder interacted with defendant's male accomplice while defendant ducked down in the backseat of the car used to bump Wilder's vehicle. Defendant testified that, after the carjacking, he joined his male accomplice in the Subaru because they were in a dark area and his male accomplice refused to take defendant home. The record lacks evidence of any threatening conduct sufficient to create

in the mind of a reasonable person the fear of death or serious bodily harm. Because a duress defense would have been futile in the Wilder Subaru carjacking case, and indeed inconsistent with the defense theory of noninvolvement in that case, defendant cannot establish that it was objectively unreasonable for defense counsel to not request a duress instruction. *Heft*, 299 Mich App at 83.

The evidence related to the carjacking of Lowe's Malibu also failed to support a duress defense. Lowe identified defendant as the perpetrator. No evidence established that defendant committed that crime to avoid any threatened harm. Rather, defendant denied any involvement in that carjacking. Again, a request for a duress defense instruction not only would have been futile in defense of the case involving Lowe, but inconsistent with defendant's own testimony. Defendant, therefore, has failed to establish that defense counsel provided ineffective assistance. *Id.*

Defendant also argues in his Standard 4 brief that defense counsel provided ineffective assistance by not objecting preemptively before Karen McLean could testify regarding hearsay statements from a person who answered Lowe's cell phone when she called Lowe's number shortly after Lowe was robbed and carjacked. The record does not support defendant's claim. On the contrary, the record discloses that defense counsel timely objected before McLean offered the challenged testimony, but the trial court overruled counsel's objection. Defendant does not argue on appeal that defense counsel should have asserted any different basis for the objection. Defendant therefore fails to establish that defense counsel's performance fell below an objective standard of reasonableness. Moreover, after McLean offered the hearsay testimony, defense counsel again objected and the trial court sustained the objection. At that time, and again later in the trial, the trial court instructed the jury to disregard that portion of McLean's testimony. Because "[j]urors are presumed to follow their instructions, and it is presumed that instructions cure most errors," defendant cannot establish that the testimony had any effect on the outcome of the proceedings. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Defendant, therefore, has failed to establish that defense counsel provided ineffective assistance in this regard.

## IV. SUFFICIENCY AND WEIGHT OF THE EVIDENCE

In his Standard 4 brief, defendant asserts that the prosecution failed to present sufficient evidence and that his convictions were against the great weight of the evidence because the prosecution failed to establish that he perpetrated the Wilder carjacking or the Lowe carjacking. We disagree.

A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, by reviewing the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Although defendant cites that Wilder was unsure of his identification at the

photographic array and Wilder was unable to identify defendant at trial, defendant admitted in his statement to the police and at trial that he was in the car at the time of the Wilder carjacking. Moreover, in his statement to the police, defendant explained that bumping Wilder's Subaru and taking it was part of the "bumper game" that he engaged in with his accomplices. Defendant told the police that he understood that his actions were unlawful and stated that he was "very sorry." Further, evidence established defendant's involvement in the Lowe and Belgrave carjackings. The victims identified defendant from photographic arrays and also at trial as the perpetrator of the charged offenses. Evidence linking the use of Lowe's Malibu to the Wilder carjacking also supported an inference linking defendant to the Wilder carjacking. Viewed in a light most favorable to the prosecution, the evidence sufficed to enable rational triers of fact to conclude beyond a reasonable doubt that defendant was one of the perpetrators of the charged offenses in each carjacking. Accordingly, defendant's claims of error in this regard fail.

Respecting the offenses related to the carjacking of Lowe's Malibu, defendant argues that the prosecution failed to present sufficient evidence to prove the elements of the charged offenses. The jury convicted defendant of carjacking, armed robbery, receiving or concealing a stolen firearm, UDAA, receiving or concealing a stolen motor vehicle, carrying a weapon with unlawful intent, and felony-firearm.

The carjacking statute provides:

> A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years. [MCL 750.529a(1)]

The elements of the crime of carjacking that the prosecution must prove are:

> (1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear. [*People v Davenport*, 230 Mich App 577, 579; 583 NW2d 919 (1998).]

The armed robbery statute provides in relevant part:

> A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

The elements necessary to prove armed robbery are:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; ___ NW2d ___ (2018).]

To establish receiving or concealing a stolen firearm, the prosecution must prove that defendant "(1) received, concealed, stored, bartered, sold, disposed of, pledged, or accepted as security for a loan (2) a stolen firearm or stolen ammunition (3) knowing that the firearm or ammunition was stolen." *People v Nutt*, 469 Mich 565, 593; 677 NW2d 1 (2004).

MCL 750.413 proscribes unlawfully driving away an automobile as follows: "Any person who shall, wilfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony . . . ."

Under MCL 750.535(7), "[a] person shall not buy, receive, possess, conceal, or aid in the concealment of a stolen motor vehicle knowing, or having reason to know or reason to believe, that the motor vehicle is stolen, embezzled, or converted." To prove that defendant is guilty of receiving or concealing a stolen motor vehicle, the prosecution must prove the following elements beyond a reasonable doubt: (1) that a motor vehicle was stolen, (2) that defendant bought, received, possessed, concealed, or aided in the concealment of the stolen motor vehicle, and (3) that defendant knew or had reason to know or reason to believe that the motor vehicle was stolen when he bought, received, possessed, concealed, or aided in the concealment of it. *People v Allay*, 171 Mich App 602, 608; 430 NW2d 794 (1988).

The elements of carrying a weapon with unlawful intent are: "(1) *carrying* a firearm or dangerous weapon, (2) with the intent to unlawfully use the weapon against another person." *People v Mitchell*, 301 Mich App 282, 292; 835 NW2d 615 (2013) (emphasis in original).

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

The trial court instructed the jury on an aiding or abetting theory of guilt. The elements necessary to convict a defendant under an aiding or abetting theory are:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Plunkett*, 485 Mich 50, 61; 780 NW2d 280 (2010) (quotation marks and citations omitted).]

The record reflects that the prosecution presented sufficient evidence for the jury to convict defendant of all of the charged offenses related to the Lowe carjacking. Lowe identified defendant as the perpetrator in both a photographic array and at trial. Because issues of witness credibility and the weight of evidence belong to the jury, this Court will not second-guess the jury's determinations. *Avant*, 235 Mich App at 505-506. Lowe also testified that defendant pointed a gun at him in a threatening manner and directed Lowe to surrender his property and Malibu which contained the gun in the glovebox. Lowe testified that defendant stole his Malibu and his personal belongings. Defendant admitted his later involvement in stealing Wilder's Subaru. Evidence established that his accomplice used Lowe's Malibu to bump Wilder's Subaru to perpetrate that carjacking. The jury could infer that the Malibu involved in the two incidents was the same vehicle, adding further evidence to connect defendant to the crimes committed against Lowe. This evidence sufficed to establish the elements of the carjacking, armed robbery, UDAA, receiving or concealing a stolen motor vehicle, carrying a weapon with unlawful intent, and felony-firearm.

Defendant argues that no testimony established that he acquired or possessed a silver gun. Lowe, however, testified that defendant carjacked his Malibu which contained his cell phone and McLean's silver or nickel-plated .380 handgun. Wilder testified that the person who carjacked him used a silver gun. The jury could infer that, after the group stole Lowe's Malibu, they used it to bump and steal Wilder's Subaru and used the stolen handgun to perpetrate that crime. They then used the Subaru to bump and steal Belgrave's Civic. Given the group's pattern of using stolen cars to commit subsequent offenses, the jury could also infer that defendant retrieved McLean's gun from the Malibu and the handgun was used in the later Wilder carjacking. The jury could reasonably conclude from this evidence that defendant received or concealed a stolen firearm and carried a weapon with unlawful intent.

Defendant also challenges the weight of the evidence regarding his convictions. Because defendant did not raise this issue in a motion for a new trial in the trial court, this issue is unpreserved. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). "Unpreserved challenges to the great weight of the evidence are reviewed for plain error affecting the defendant's substantial rights." *Id*. (citation omitted). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. at 696 (citation omitted). Defendant makes vague arguments regarding the weight of the evidence. The record evidence in this case supports the jury's decisions to convict defendant of all of the charged offenses. The evidence overwhelmingly weighed in favor of the prosecution. The evidence did not heavily preponderate against the verdict and defendant has failed to establish any plain error that affected his substantial rights.

## V. AIDING AND ABETTING

In his Standard 4 brief, defendant makes various arguments related to the trial court's decision to instruct the jury on aiding or abetting. Defense counsel, however, expressed satisfaction with the trial court's instructions, including specifically the instruction on aiding or abetting. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *Carter*, 462 Mich at 215 (quotation marks and citation omitted). "If any rights are waived under a rule, appellate review of a claimed deprivation of those rights is foreclosed

because the waiver has extinguished any error." *People v Adams*, 245 Mich App 226, 240; 627 NW2d 623 (2001). Defense counsel's approval of the trial court's instructions extinguished any error, leaving no error to review.

## VI. SCORING OF OFFENSE VARIABLE 10

Lastly, in his Standard 4 brief, defendant challenges the trial court's assessment of 15 points for Offense Variable (OV) 10 under the sentencing guidelines on the ground that no evidence established the exploitation of a vulnerable victim in any of the cases. We disagree.

We review de novo issues of statutory interpretation, including those that involve the interpretation and application of the legislative sentencing guidelines. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016). The trial court's factual determinations for scoring under the sentencing guidelines are "reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. When calculating the sentencing guidelines, the trial court may consider all record evidence. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The trial court may rely on reasonable inferences arising from the record evidence *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). The application of the facts to the law, or whether the facts are adequate to satisfy the statutory scoring conditions, is a question of statutory interpretation reviewed de novo. *Hardy*, 494 Mich at 438.

Offense Variable 10 considers "exploitation of a vulnerable victim." MCL 777.40(1). The court must assess 15 points for OV 10 when "[p]redatory conduct was involved." MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim, or a law enforcement officer posing as a potential victim, for the primary purpose of victimization." MCL 777.40(3)(a). "Predatory conduct" includes forms of "preoffense conduct," which are commonly understood as predatory in nature, such as lying in wait and stalking, as opposed to purely opportunistic criminal conduct or "preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011). In *Huston*, our Supreme Court explained that lying in wait, armed, and in anticipation of an armed robbery or carjacking, is sufficient "predatory conduct" to support an assessment of OV 10 at 15 points. Knowing the specific identity of a victim is unnecessary. *Id*.

MCL 777.40(3)(c) defines "vulnerability" as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." In *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008), our Supreme Court listed factors to be considered by a sentencing court when determining whether a victim was vulnerable. Those factors include the expressly listed characteristics, relationships, and circumstances identified in subdivisions (b) and (c), which are:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender

-13-

exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*Id.*]

Our Supreme Court further explained:

> The absence of one of these factors does not preclude a finding of victim vulnerability when determining whether it is appropriate to assess 15 points for predatory conduct. Rather, the evidence must show merely that it was readily apparent that the victim was susceptible to injury, physical restraint, persuasion, or temptation. [*Id.* at 158 n 11.]

In this case, the record establishes that, in each case, defendant and his accomplices prowled the streets for victims. Further, the victims were accosted while vulnerable and exposed and defendant and his male accomplice brandished handguns and threatened the unarmed victims. Defendant admitted that, in the Wilder carjacking and in the Belgrave carjacking, he and his accomplices played the "bumper game." Defendant recounted driving around with his accomplices looking for victims to hit with their vehicle. The plan to instigate a collision naturally would cause unwary drivers to leave the safety of their vehicles to check for damage. The victims held at gunpoint were vulnerable to severe injury including death and made vulnerable to theft. A preponderance of the evidence in this case supports the trial court's finding of predatory conduct. Accordingly, the trial court did not err by assessing 15 points for OV 10.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford