*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY GAYL LAKE,

        Defendant-Appellant.

UNPUBLISHED
June 11, 2020

No. 346128
Montcalm Circuit Court
LC No. 2017-023481-FC

Before: CAMERON, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of safe-breaking, MCL 750.531, larceny in a building, MCL 750.360, and possession of burglar's tools, MCL 750.116. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 47 months to 25 years for the safe-breaking conviction, 2 to 6 years for the larceny in a building conviction, and 47 months to 15 years for the possession of burglar's tools conviction.[1] We affirm defendant's convictions and sentence, but vacate the trial court's order of restitution and remand for correction of the judgment of sentence.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In December 2017, defendant and his girlfriend, Rachel Carlson, lived with Shannon White at his mobile home. White and Carlson had been friends for several years. White testified that he permitted Carlson and defendant to stay with him on a temporary basis, and that he had never had a romantic relationship with Carlson, although he had previously been interested in one. Carlson and White each had a key to the front door of White's residence.

---

[1] The jury acquitted defendant of one count of possession of a firearm as a felon, MCL 750.224f(1), one count of possession of ammunition as a felon, MCL 750.224f(3), and two counts of possession of a firearm during the commission of a felony, MCL 750.227b.

On a day in early December 2017, White returned home from work at approximately 6:00 p.m. He found the back door of his mobile home ajar. White testified he had weatherproofed that door for the winter by sealing it with plastic and tape, and that the door had been locked with a padlock from the inside. He noticed that the plastic weatherproofing was ripped. Upon entering the home, White discovered that several items were missing, including his television and video game console, a rifle, ammunition, and a locked safe containing silver coins, silver certificate money, silver spoons, his father's silver ring, and various personal documents. The padlock was not on the door. White later discovered that other items were also missing from the residence, including a new space heater, an electronic tablet, and various knives.

Michigan State Police Trooper James Yates responded to White's report of missing items that same day. Trooper Yates testified that White told him that he had asked Carlson and defendant to leave the night before. White informed Trooper Yates that defendant and Carlson had previously stayed in a neighboring mobile home. Trooper Yates went there, accompanied by the manager of the mobile home community, and knocked on the door. Defendant answered. Trooper Yates asked if defendant he knew why he was there; defendant responded that he had taken items from White's residence and that they were inside the home.

Defendant let Trooper Yates into the home and directed him to the bedroom, where Trooper Yates found at least some of White's property. White identified the property as his. Trooper Yates then arrested defendant for the theft of the items from White's residence and gave defendant *Miranda*[2] warnings. Trooper Yates asked defendant if he would agree to talk with him, and defendant agreed. Defendant informed Trooper Yates that he alone had taken the items from White's residence that morning. According to Trooper Yates, defendant also stated that he had broken into White's safe by using a screwdriver and the bottom of a cast iron frying pan. Defendant told Trooper Yates that he took the items from White's residence because he believed that White and Carlson were involved sexually. Defendant was arrested by Officer Parsons[3] of the Greenville Public Safety Department.

Defendant's trial was originally scheduled for March 19, 2018, but was adjourned until April 17, 2018. On that date, after a jury pool had gathered at the courthouse, defendant accepted a plea offer from the prosecution. Defendant later filed a motion to withdraw the plea, which the trial court granted. Defendant's first three appointed attorneys each moved to withdraw after having substantial disagreements with defendant, which included threats of legal action against the attorneys. After each new attorney was appointed, the trial date was again adjourned to allow defendant's new attorney time to prepare—in fact, the trial court adjourned the trial date twice after defendant's last attorney was appointed.[4] Ultimately, the trial was scheduled to begin on

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] The lower court record does not reflect Officer Parsons' first name.

[4] On July 10, 2018, the trial court entered an order adjourning the trial until August 7, 2018. Later, the trial court adjourned the trial until September 18, 2018. This new trial date was reflected in the scheduling order entered on August 24, 2018. The register of actions does not reflect why the

September 18, 2018. On the first day of trial, defense counsel moved to again adjourn the trial to have additional time to prepare based on allegedly newly discovered evidence. The trial court denied the motion, noting the numerous previous adjournments and concluding that defense counsel had had adequate time to prepare for trial.

The jury convicted defendant as described. At sentencing, the trial court ordered restitution in the amount of $1,180, in addition to court costs of $1,500. The trial court stated that the restitution amount was "reimbursement to the Court in the amount of $1,180 for that canceled jury fee," in reference to the jury pool that had assembled on April 17, 2018 before defendant accepted the plea agreement that he later withdrew.

This appeal followed.

## II. DENIAL OF MOTION TO ADJOURN

Defendant argues that the trial court abused its discretion by denying his request for an adjournment on the first day of his trial. We disagree.

We review for an abuse of discretion a trial court's decision regarding a motion for an adjournment. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014) (citation omitted).

A motion for an adjournment or a continuance must be made on the basis of good cause. MCR 2.503(B)(1); *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002). A trial court may use its discretion to grant an adjournment "to promote the cause of justice." MCR 2.503(D)(1). The trial court considers several factors when determining whether a defendant has demonstrated good cause, including " 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' " *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). To obtain relief on appeal, even if a defendant can demonstrate good cause for adjournment, he must also show that he was prejudiced by the trial court's denial of his motion. *Snider*, 239 Mich App at 421.

A defendant may move a trial court for an adjournment on the basis of the unavailability of a witness or evidence. See *People v Steele*, 283 Mich App 472, 488; 769 NW2d 256 (2009), MCR 2.503(C). MCR 2.503(C)(1) provides: "A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts." Additionally, MCR 2.503(C)(2) provides that a trial court may grant an adjournment on the basis of the unavailability of a witness or evidence "only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence."

---

trial did not take place on August 7, nor does it show that either party had requested an additional adjournment after the July 10 adjournment order was entered.

-3-

Defendant cannot show that the trial court abused its discretion by denying yet another request for adjournment. Defendant's fourth (and final) trial attorney was appointed in July 2018 and received two adjournments of the trial date in order to prepare. Additionally, defendant did not seek a further adjournment of the trial until the day of trial, despite having been aware of the trial date since at least August 24, 2018, when the scheduling order reflecting the most recent adjournment was entered. Defendant has not shown that the period of approximately two months between his most recent attorney's appointment and trial was an insufficient amount of time to prepare.

Defendant further argues that the trial court should have granted an adjournment to allow defense counsel to investigate Officer Parsons as a potential witness, to obtain Officer Parsons' police report, and to review video clips from Trooper Yates's body camera that the prosecution had recently provided. We find no merit to these arguments. At the hearing on defendant's motion to adjourn, defendant did not specifically argue that he intended to call Officer Parsons as a witness or to admit his police report as evidence at trial, but that he was unable to do so without additional time to prepare; rather, defense counsel argued that he had only discovered Officer Parsons as a potential witness "about a week ago" and requested more time to determine whether Parsons' testimony or report would aid his defense. Nor has defendant demonstrated that Officer Parsons or his police report were unavailable to him during the two months between his attorney's appointment and the trial—defendant merely argued that Officer Parsons had been on vacation the previous week.[5] Defendant also has not established that he requested an adjournment as soon as possible, or that he used diligent efforts to investigate Officer Parsons and his report as potential evidence. See MCR 2.503(C)(2).

Regarding defendant's argument that he required additional time to review the video recordings, the record shows that the prosecution provided defendant's first court-appointed attorney with all of the footage recorded by Trooper Yates's body camera approximately seven months before trial. The recordings defense counsel received one week before trial consisted of selected clips excerpted from that footage. Defendant did not establish that a one-week period of time was insufficient to review excerpts that were taken from the very footage that defendant had received months earlier. Moreover, although defendant argues that additional time was required as a result of the poor video and audio quality, the quality of the excerpted clips did not differ from the quality of the full footage received by defendant months prior. Defendant did not establish

---

[5] Defendant argued before the trial court, and argues on appeal, that Officer Parsons' police report raised a question whether defendant was handcuffed, and therefore in custody, and made incriminating statements to Trooper Yates before Trooper Yates gave defendant his *Miranda* warnings. However, the prosecution informed the trial court, and defendant did not dispute, that Officer Parsons' police report was four sentences long and did not address defendant's statements to Trooper Yates. Moreover, defendant's two previous appointed attorneys both stated at their withdrawal hearings that they had reviewed the police reports and videos given to them in discovery and met with defendant extensively about his case—the issue of whether defendant's waiver of his rights was valid and his statements admissible was not a new issue to the case.

that he was unable to adequately review the video clips without a further adjournment. See *Coy*, 258 Mich App at 18.

Additionally, defendant failed to establish that he was not negligent in the timing of his request for an adjournment. See *id*. Defendant waited until the day of trial to request the latest adjournment. Although defendant had several attorneys withdraw from representation, and the trial court appointed defendant's most recent attorney in July 2018, defendant did not establish that the withdrawals and appointments of attorneys contributed to his delay in requesting an adjournment. Moreover, the trial court had repeatedly cautioned defendant that it intended to hold the trial as scheduled without further adjournment. And even if defendant only concluded that he would require additional time when defense counsel received the excerpted video clips, that still occurred a week before trial.

Further, defendant had received many prior adjournments; the trial court adjourned or rescheduled the trial at least once following each appointed attorney's withdrawal from representing defendant. Although these adjournments were not always requested by defendant, and some were granted by the trial court with a view towards protecting defendant's right to the effective assistance of counsel, the trial court determined that defendant's behavior and lack of cooperation with his attorneys contributed to his attorneys' withdrawals from the case and contributed to delaying the trial. The number of previous adjournments either requested by defendant or occasioned by his disagreements with his appointed attorneys weighs against a determination that there was good cause to adjourn the trial on the first day of the trial. See *id*.

Finally, defendant has not established that he was prejudiced by the trial court's denial of his request to adjourn the trial. *Snider*, 239 Mich App at 421. Defendant was not deprived of the opportunity to call Officer Parsons as a witness or to seek to introduce Officer Parsons' police report as evidence at trial. Defendant cross-examined Trooper Yates regarding Officer Parsons' role during the investigation, as well as the circumstances surrounding Trooper Yates's administration of defendant's *Miranda* warnings, defendant's waiver of his rights, and the timing of defendant's admissions relative to the waiver. Defendant also had the opportunity to examine the video clips before trial; further, defendant could have objected to the admission of the clips, but chose not to do so. Defendant has not demonstrated that he was denied the ability to present a defense or that defense counsel was unable to properly investigate and prepare for trial by virtue of the trial court's denial of his motion to adjourn. Therefore, defendant has not established that he was prejudiced by the trial court's decision. *Id*. Because defendant has not demonstrated good cause for an adjournment or prejudice from the trial court's decision, we conclude that the trial court did not abuse its discretion by denying defendant's motion to adjourn the trial. *Jackson*, 467 Mich at 276; *Snider*, 239 Mich App at 421.

III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions. We disagree. We review de novo whether there was sufficient evidence to support a defendant's conviction. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

"In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there

was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). We are required to draw all reasonable inferences and credibility determinations in favor of the jury verdict, *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), because "[j]uries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992) (quotation marks and citation omitted), mod 441 Mich 1201 (1992); see also *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (citation omitted).

Defendant challenges the sufficiency of the evidence that he was the person who committed the offenses for which he was convicted. Additionally, he argues that the evidence was insufficient for the jury to conclude that the ordinary items he used to break into White's safe were burglar's tools. We disagree.

In criminal cases, "identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The elements of safe-breaking are (1) the defendant broke into a safe, and (2) at the time of the breaking, the defendant intended to commit a larceny. MCL 750.531. The elements of a larceny are that a defendant commits an unlawful taking and carrying away of the personal property of another person with the intent to steal that property. *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016). MCL 750.360 also requires that the taking occur within the confines of a building. *Id*. at 401-402. The elements of possession of burglar's tools are that (1) the defendant possessed tools adapted and designed for a burglary, (2) the defendant had knowledge that the tools were adapted and designed for that purpose, and (3) the defendant possessed them with the intent to employ them in breaking and entering. See MCL 750.116; *People v Wilson*, 180 Mich App 12, 16; 446 NW2d 571 (1989); see also *People v Dorrington*, 221 Mich 571, 574; 191 NW 831 (1923).

There was sufficient evidence presented at the trial for the jury to conclude that defendant was the person that took White's personal property from his residence without permission and with the intent to steal that property. There was also sufficient evidence that defendant was the person who broke into White's safe with the intent to steal the contents of the safe. Defendant's admission to Trooper Yates that he took the items from White's residence and broke White's safe was direct evidence of his identity. Additionally, Trooper Yates found defendant in a mobile home near White's home, and defendant directed Trooper Yates to a bedroom where White's property was located. Defendant was the only individual in the home at the time of Trooper Yates's investigation, and defendant told Trooper Yates that he was the only individual involved in the crimes.

Defendant points out that Trooper Yates learned during his investigation that a neighbor had observed two individuals leaving White's residence on the night of the incident, and Trooper Yates testified that he did not check for fingerprints because defendant admitted that he had taken the items from White's residence. Even assuming that this testimony raised doubt regarding whether defendant was the sole individual involved in the crimes, viewed in the light most favorable to the prosecution, *Harris*, 495 Mich at 126, it does not negate defendant's admissions or raise a reasonable doubt that defendant committed the safe-breaking or larceny of White's

residence. Therefore, the evidence was sufficient to support a jury's findings that defendant was the person who broke into White's safe with the intent to commit a larceny and that defendant committed an unlawful taking and carrying away of White's personal property from White's residence with the intent to steal that property. See MCL 750.531; *March*, 499 Mich at 401-402.

Regarding the possession of burglar's tools conviction, defendant argues that *Dorrington*, 221 Mich at 574, supports the principle that common household items are not burglar's tools. In *Dorrington*, the Michigan Supreme Court concluded that the defendant's house keys, alarm clock with battery, and knitting needles were not burglary tools, because there was no evidence that the defendant intended to use them in a burglary and that because of the items' common household nature they could not be presumed to be used for the purpose of breaking and entering. *Id*. at 574-575.

A screwdriver and frying pan are common household items. However, the jury in this case was not required to *presume* that they were intended for use in breaking and entering; defendant admitted to Trooper Yates that he used those items to break into White's safe with the intent to take the items within the safe. Defendant's admissions and the circumstances surrounding his arrest, such as Trooper Yates's discovery of the safe with the locking mechanism completely broken off and missing, permitted the jury to conclude that the items defendant used were "contrived and adapted for breaking and entering." *In re Forfeiture of One Front End Loader*, 192 Mich App 617, 623-624; 481 NW2d 791 (1992), quoting *People v Murphy*, 28 Mich App 150, 157; 184 NW2d 256 (170); see also *People v Wilson*, 180 Mich App 12, 14-15; 446 NW2d (1989). The evidence was sufficient to support the jury's finding that defendant possessed burglar's tools. See MCL 750.116.

In sum, there was sufficient evidence to enable the jury to conclude beyond a reasonable doubt that defendant broke into White's safe, committed a larceny in a building, and possessed burglar's tools. *Harris*, 495 Mich at 126.

## IV. ADMISSION OF VIDEO RECORDINGS

Defendant argues that the trial court abused its discretion by admitting excerpts of video recorded from Trooper Yates's body camera because the evidence was not properly authenticated. We disagree.

Authentication of evidence is governed by MRE 901. *People v Muhammad*, 326 Mich App 40, 59; 931 NW2d 20 (2018).[6] "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the

---

[6] We note that defendant argues that the seven-part test for the authentication of evidence under *People v Taylor*, 18 Mich App 381, 383-384; 171 NW2d 219 (1969), aff'd 386 Mich 204 (1971), is applicable in this case and supports the conclusion that the video recordings were not properly authenticated. The Michigan Supreme Court has recognized that MRE 901, rather than the seven-part test in *Taylor*, governs the authentication of evidence. *People v Berkey*, 437 Mich 40, 49-52; 467 NW2d 6 (1991). Therefore, we address the authentication of the video recordings under MRE 901.

matter in question is what its proponent claims." MRE 901(a). " 'Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the possibility of intermeddlers tampering with it.' " *Muhammad*, 326 Mich at 59 (citation omitted). Authentication can be accomplished by testimony of a witness with knowledge that "a matter is what it is claimed to be." MRE 901(b)(1).

Trooper Yates testified that he controlled and activated the video recording devices and that the video clips accurately portrayed his interactions with defendant on December 4, 2017, including defendant's admissions that he took the items from White's residence and broke into White's safe with a screwdriver and a frying pan. Trooper Yates also testified that the video recordings had been stored on a removable memory card and that the memory card had sufficient data storage. Trooper Yates was responsible for creating the video recordings, had personal knowledge of how the evidence was created, and testified that the evidence was what the prosecution claimed it was. Therefore, Trooper Yates's testimony provided a sufficient foundation for the admission of the video clips. See MRE 901(b)(1); *Muhammad*, 326 Mich App at 59. The trial court did not abuse its discretion by admitting the video recordings because the evidence was properly authenticated by Trooper Yates's testimony. See *Gursky*, 486 Mich at 606.

## V. SCORING OF OV 13

Defendant argues that the trial court erred by assessing 10 points for offense variable (OV) 13 at sentencing. We disagree.

With regard to sentencing, a trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute in part on other grounds as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). We review de novo whether the facts, as found, adequately support the points assessed for sentencing variables. *Id.* If a sentence is within the appropriate minimum guidelines sentence range, a defendant is entitled to resentencing only if there is a scoring error or if the trial court relied on inaccurate information. *People v Francisco*, 474 Mich 82, 88-89, 92; 711 NW2d 44 (2006); *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997).

We review de novo the interpretation and application of statutes. *People v Janes*, 302 Mich App 34, 41; 836 NW2d 883 (2013). This Court reviews the language of the statute in order to determine the Legislature's intent. *Id.* at 43. "When the statutory language is clear and unambiguous, this Court must enforce it as written." *Id.*

The trial court is required to assess 10 points for OV 13 (continuing pattern of criminal behavior) if the offense was a part of a pattern of felonious criminal activity involving three or more crimes against a person or property or a violation of the public health code. MCL 777.43(1)(d). Specifically, MCL 777.43(1)(d) provides:

> (1) Offense variable 13 is continuing pattern of criminal behavior. Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> \* \* \*

(d) The offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property or a violation of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA 368, MCL 333.7401 and 333.7403 .................................. 10 points

The trial court must not score conduct scored in OV 11 (criminal sexual penetration) or OV 12 (contemporaneous felonious acts) when scoring OV 13. MCL 777.43(2)(c). The trial court must consider all crimes that occurred within a five-year period, including the sentencing offense, when determining whether there was a continuing pattern of criminal behavior. MCL 777.43(2)(a); see also *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013).

Defendant argues that because the sentencing offense (safe-breaking) is a crime against a person, the trial court was required to find a pattern of three or more crimes against a person in order to assess 10 points for OV 13. We disagree. While a pattern of three or more crimes is required for the trial court to assess 25 points under OV 13, see MCL 777.43(1)(c), the plain language of MCL 777.43(1)(d) does not require that the crimes that constitute the pattern of felonious criminal activity all belong to the same crime category, as long as they are "a combination of 3 or more crimes against a person or property or a violation of . . . the public health code." *Id*. The disjunctive "or" is used to show a choice between alternatives, meaning that the pattern of felonious criminal activity could involve a combination of crimes against a person, crimes against property, or crimes against the public health code, but need not be limited to one crime class. See *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 148; 783 NW2d 133 (2010). Moreover, the word "combination" would be unnecessary if the pattern of felonious activity was required to be made up of only one class of crime; we avoid constructions that render statutory language surplusage or nugatory. See *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011). And other subsections of MCL 777.43(1) provide different penalties for patterns of felonious criminal activity that consist of only crimes against a person, only crimes against property, and only violations of the public health code. See MCL 777.43(1)(c), (e), and (f). The only reasonable reading of subsection (d), read in the context of the rest of the statute, is that (d) is intended to address a pattern of felonious activity involving different crime classes. See *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

Our Supreme Court order in *People v Nelson*, 491 Mich 869, 869-870 (2012) does not aid defendant's argument. The Court in *Nelson*, 491 Mich at 869-870, reversed the scoring of OV 13 for the reasons stated in the dissenting opinion of this Court in *People v Nelson*, unpublished per curiam opinion of the Court of Appeals, issued July 19, 2011 (Docket No. 296932) (SHAPIRO, J., concurring part and dissenting in part), pp 1-2. Judge Shapiro reasoned that, under MCL 777.43(1)(c), a sentencing offense can only be part of a pattern of crimes against a person if the sentencing offense itself is a crime against a person. See *id*. The sentencing offense in *Nelson* was a crime involving a controlled substance. *Id*. Because the sentencing offense was not a crime against a person, the sentencing offense was not within the pattern of crimes against a person. See *id*. Therefore, *Nelson* does not establish that the sentencing offense determines the crime category for the pattern of felonious criminal activity under MCL 777.43(1)(d). Rather, *Nelson* established that a sentencing offense must be of one of the crime classes included within the pattern of felonious criminal activity.

Defendant's sentencing offense was safe-breaking, a crime against a person. See MCL 777.16y. Defendant was also convicted of larceny in a building and possession of burglar's tools, which are crimes against property. See MCL 777.16f; MCL 777.16r. These acts resulted in three separate convictions. The combination of these convictions therefore constituted a pattern of felonious criminal activity involving three or more crimes against a person or property, and satisfied the scoring requirements for OV 13 under MCL 777.43(1)(d). The trial court did not err by assessing 10 points for OV 13. See *Gibbs*, 299 Mich App at 288.

## VI. RESTITUTION

Finally, defendant argues that the trial court erroneously ordered restitution for the costs of a dismissed jury pool. The prosecution concedes that the trial court erred in this regard. On this record, we agree.

Defendant failed to preserve this issue for appellate review because he did not raise the issue when the trial court ordered restitution. See *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009). Generally, we review de novo the interpretation and application of statutes. *Janes*, 302 Mich App at 41. However, this Court reviews unpreserved challenges to a trial court's imposition of court costs for plain error affecting the defendant's substantial rights. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015).

"Courts may only impose costs in a criminal case when such costs are authorized by statute." *People v Juntikka (On Remand)*, 310 Mich App 306, 310; 871 NW2d 555 (2015). This Court first reviews the language of the statute in order to determine the Legislature's intent. *Janes*, 302 Mich App at 43. "When the statutory language is clear and unambiguous, this Court must enforce it as written." *Id*.

MCL 769.34(6) provides that a trial court may order a defendant "to pay any combination of a fine, costs, or applicable assessments" and "shall order payment of restitution as provided by law." MCL 780.766 pertains to restitution to be paid to a victim of a crime. *People v McKinley*, 496 Mich 410, 419-420; 852 NW2d 770 (2014). MCL 780.766(2) provides:

> Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. For an offense that is resolved by assignment of the defendant to youthful trainee status, by a delayed sentence or deferred judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall order the restitution required under this section.

The Michigan Supreme Court determined that "MCL 780.766(2) requires a direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded." *McKinley*, 496 Mich at 421. Therefore, restitution involves a loss that a victim sustained as the result of a defendant's conduct that formed the basis of his or her conviction.

Defendant entered his no-contest plea in April 2018 after prospective jurors had assembled for defendant's trial on that day. The trial court then dismissed the jurors.[7] When the trial court sentenced defendant, the trial court ordered $1,180 in restitution to the court for the expenses of assembling the dismissed jury. Plaintiff confirmed that this amount was only for the dismissed jury and that White did not request restitution for any lost property. The trial court "order[ed] reimbursement to the [c]ourt in the amount of $1,180 for that canceled jury fee."

The trial court did not order restitution on the basis of any losses sustained by White, and there was no evidence regarding the amount of any loss sustained by White as a result of defendant's conduct. White, as the victim of defendant's actions, did not bear the costs of the dismissed jury. The trial court lacked the statutory authority to order restitution to the court on the basis of the dismissed jury. See MCL 780.766(2); *Juntikka*, 310 Mich App at 310. This error was plain and affected defendant's substantial rights. See *Carines*, 460 Mich at 763-764.

We note that a trial court possesses the authority to impose payment of "costs reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case." See MCL 769.1k(1)(b)(*iii*). Nothing in this opinion should be read as stating that the costs of a dismissed jury may not, under appropriate circumstances, be assessed as an actual cost or as reasonably related to an actual cost incurred by the court, if an appropriate factual basis is provided. See *Konopka*, 309 Mich App at 359-360. We merely hold that payment of such a cost may not be ordered as restitution.

We affirm defendant's convictions and sentences, but vacate the trial court's order of restitution and remand for correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Anica Letica

---

[7] As noted, defendant later withdrew his no-contest plea after which there was a jury trial, and the jury found defendant guilty of safe-breaking, larceny in a building, and possession of burglar's tools.

-11-